**UNITED STATES, Appellee,**

v.

**James E. FRENCH, Sergeant First Class, U.S. Army, Appellant.**

No. 63,229.

CM 8801694.

U.S. Court of Military Appeals.

Argued March 15, 1990.

Decided Sept. 10, 1990.

For Appellant: *Captain Allen F. Bareford* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Lauren B. Leeker, Captain Brian D. Bailey* (on brief).

For Appellee: *Major Martin D. Carpenter* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial with officer and enlisted members. After mixed pleas, he was found guilty of two specifications of communicating indecent language to a child under 16 years of age, and two specifications of committing

an indecent act on a child under 16 years of age, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. Appellant was sentenced to 10 years' confinement, reduction to pay grade E–1, and a bad-conduct discharge. Pursuant to a pretrial agreement, the convening authority approved the sentence except for confinement exceeding 30 months. The Court of Military Review affirmed in an unpublished opinion. This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED IN DENYING A DEFENSE MOTION TO DISMISS SPECIFICATION 2 OF THE CHARGE FOR FAILURE TO STATE THE OFFENSE OF INDECENT LANGUAGE IN THAT THE WORDS ALLEGEDLY SPOKEN WERE NOT INDECENT.

Appellant was originally charged with one specification of committing an indecent act with his 7–year–old natural daughter, M, by laying on top of her and rubbing his groin area against her. He was also charged with a number of specifications involving his 15–year–old stepdaughter, A. These included communicating indecent language to A by telling her that he had been having sexual fantasies about her; and committing an indecent act with A by fondling her lower back, buttocks, and upper thighs. The subject of this appeal is specification 2 of the Charge, which originally alleged that appellant took "indecent liberties with" A "by asking" her "if he could climb into bed with her."

Prior to entering pleas, defense counsel moved to dismiss the indecent-liberties specification in that it "failed to state an offense," because it did not allege "that the accused committed the act with the intent to arouse, appeal to, or gratify" his or the victim's "sexual desires." In spite of this deficiency, trial counsel argued that the specification still alleged an indecent act. The military judge disagreed but did find that the specification sufficiently alleged communicating indecent language.[1]

Defense counsel then moved to dismiss the specification for failing to state an offense. He argued that the language pleaded was not indecent *per se* and that not all of the elements were sufficiently pleaded, either expressly or by necessary implication. He further argued, therefore, that appellant was not given adequate notice against what he had to defend. Trial counsel had stated earlier that the Government originally did not charge communicating indecent language because it did not "honestly" believe the language to be offensive, although it felt appellant's conduct was offensive. Despite trial counsel's original position, he did not join in the defense motion to dismiss. The military judge adhered to his original ruling and denied the motion. The judge did offer defense counsel a continuance, which was declined.

Appellant pleaded guilty to committing an indecent act with his daughter, and not guilty to all the specifications involving his stepdaughter. He was tried by members.[2] The Government's case rested primarily upon A's testimony. Appellant testified in his own behalf and denied that any of the offenses ever happened. Subsequently, he was found guilty of all specifications. Appellant claims again on appeal that the specification alleging communicating indecent language failed to state an offense under the Uniform Code.

■ Communicating indecent language to a child under the age of 16 includes the following elements:

1. Specification 2 originally alleged that appellant "did ... take indecent liberties with [A], a female under the age of 16 years, not [appellant's] wife ..., by asking ... [her] if he could climb into bed with her."

 The military judge amended the specification to allege that appellant "did orally communicate to [A], a child under the age of 16 years, not [appellant's] wife ... certain indecent language, to wit: asking [A] if he could climb into bed with her."

2. The members were given specification 2 as originally pleaded (App Ex IX), but the instructions were phrased in terms of the amended version, and the finding was simply "guilty." The court-martial order erroneously reflects the findings and should be corrected.

(1) That the accused orally or in writing communicated certain language to a child under the age of 16;

(2) That such language was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of such a nature to bring discredit upon the armed forces.

Para. 89b, Part IV, Manual for Courts–Martial, United States, 1984.

"Indecent" language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. The language must violate community standards....

Para. 89c. The word " '[o]bscene' was removed from the title [of the offense] because it is synonymous with 'indecent.' " Drafters Analysis, *Manual, supra* at A21–102.

 A specification must expressly or by fair implication allege all the elements of an offense. Specifications which are challenged immediately at trial will be viewed in a more critical light than those which are challenged for the first time on appeal. *See United States v. Bryant,* 30 MJ 72, 73 (CMA 1990); *United States v. Brecheen,* 27 MJ 67, 68 (CMA 1988); *United States v. Watkins,* 21 MJ 208, 209 (CMA 1986).

We certainly are not the first jurists to wrestle with the issue of what is indecent or obscene against a constantly changing set of societal mores and values. *Cf. Jacobellis v. Ohio,* 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring): "I shall not today attempt further to define the kinds of material I understand to be [obscene]; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it...." This Court has never specifically addressed what constitutes indecent *language* under the Uniform Code of Military Justice. We have had occasion, however, to examine what constitutes an indecent *act* under the

Code: "Under some circumstances a particular act may be entirely innocent; under other conditions, the same act constitutes a violation of the Uniform Code." *United States v. Holland,* 12 USCMA 444, 445, 31 CMR 30, 31 (1961). Further, in determining whether a given act with a child is indecent, the age of the victim is important. *United States v. Tindoll,* 16 USCMA 194, 195, 36 CMR 350, 351 (1966).

There have been some guideposts as to what is obscene or indecent language. *See* 42 C.J.S. Indecent at 559. "The term has been held equivalent to, or synonymous with, 'immodest,' 'immoral,' 'impure,' ... 'obscene'...." *Id.* at 559–60 (citations omitted). *See, e.g., Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957): the standard for judging obscene material is

> whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.

*Id.* at 489, 77 S.Ct. at 1311 (footnote omitted).

The Courts of Military Review have wrestled with the problem of indecent and obscene language in several well-reasoned opinions. Indeed, paragraph 89c is based upon *United States v. Wainwright,* 42 CMR 997, 999 (AFCMR), *aff'd on other grounds,* 20 USCMA 183, 43 CMR 23 (1970), which held, *inter alia:*

> "The terms indecent and obscene refer to that which is grossly offensive to modesty, decency or propriety, or shocks the moral sense, because of its vulgar, filthy, or its disgusting nature, or its tendency to arouse lustful thoughts. The language used must violate community standards of decency and substantially exceed customary limits of candor." AFM 111–2, Court–Martial Instructions Guide, paragraph 3–158, page 89, 15 June 1970.

\* \* \* \* \* \*

... The sufficiency of a specification to allege communication of indecent or obscene language, however, does not re-

quire that the words allegedly uttered by the accused be indecent or obscene *per se,* for even "chaste words may be made the medium of expressing obscene thoughts."

(Footnotes and citations omitted).

■ In assessing whether indecent language is framed adequately in a specification, the courts below have recognized a number of factors, including: "fluctuating community standards ..., the personal relationship existing between a given speaker and his auditor, ... and the probable effect of the communication" as deduced from the four corners of the specification. A test which has been used is "whether the particular language is calculated to corrupt morals or excite libidinous thoughts." *United States v. Linyear,* 3 MJ 1027, 1030 (NCMR 1977), *pet. denied,* 5 MJ 269 (1978) [*citing United States v. Simmons,* 27 CMR 654(ABR), *pet. denied,* 10 USCMA 679, 27 CMR 512 (1959) ]. We adopt this test as an appropriate determination for indecent language.

■ Under the facts of this case, we are satisfied that the specification adequately stated the offense of communicating indecent language for a number of reasons. The four corners of the specification allege that appellant asked his stepdaughter, a girl under the age of 16, "if he could climb into bed with her." Each word individually is chaste, if not innocuous. As a whole, however, the language certainly conveys an indecent message. At a minimum, the language reasonably could have been construed as alleging soliciting illicit sexual activity. Art. 134.

By analogy, in *Wainwright,* the Court of Military Review held that an airman's saying to an adult woman, "Meet me at the Downtowner Motel," did *not* constitute communicating indecent language. 42 CMR at 1000. However, when the same airman on an earlier occasion said to the same woman, "I'll give you $50.00 for a date," such language was found to communicate "an indecent message when reasonably interpreted by commonly accepted community standards." (*Id.* at 1000–1001.) Judge Brewer explained:

Human experience of several thousand years standing dictates the conclusion that when compensation ... is tendered to induce female company, it is understood that something more than scintillating conversation is the expectation of the solicitor.

*Id.* at 1001. When an adult male asks his minor female stepdaughter if he can climb into bed with her, community standards are such that it is not unreasonable to accuse him of asking for something more than a restful sleep. Whether the accusation was true in this case was properly a question of fact for the members. *Cf. United States v. Castillo,* 29 MJ 145, 149–50 (CMA 1989) (accused's act of pointing down at his pants in front of his stepdaughter was not unreasonably interpreted as a solicitation for oral sex).

■ There were no words of criminality absent from the specification. The other specifications in this case, which alleged indecent acts committed upon a child under the age of 16 (appellant's daughter and stepdaughter), required the additional element that appellant committed the indecent acts "*with intent to ... gratify ... [his] ... sexual desires.*" Para. 87b(2)(e), Part IV, Manual, *supra* (emphasis added). For the act of communicating indecent language, however, there is no additional requirement that it be done with the intent to gratify the "sexual desires of the accused." All that is necessary is that the specification allege that the accused communicated an indecent message. This was adequately done here, particularly in light of the other specification, to which appellant had no objection, alleging that at an earlier time, appellant had told the same stepdaughter that he "had been fantasizing about having sex with" her.

Notwithstanding the Government's hesitation at trial, we are satisfied that appellant's asking his stepdaughter if he could climb into bed with her conveyed a message as equally libidinous and obscene as telling her that he "had been fantasizing

about having sex with" her. Therefore, the specification adequately alleged communicating indecent language.[3]

The decision of the United States Army Court of Military Review is affirmed.

SULLIVAN, Judge (concurring):

I completely agree with the excellent analysis of this case by my Brother, Judge Cox.

I note in addition that the members found appellant guilty of communicating indecent language in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The military judge had instructed them on this offense as follows:

MJ: Specification 2; the elements are as follows:

That, at Hinesville, Georgia, on or about 11 April 1988, the accused orally communicated to [A] certain language, that is, by asking the said [A] *if he could climb into bed with her.*

Element Two: That, at the time, [A] was a *child under the age of 16 years,* and *not the wife of the accused.*

Three: *That this language was indecent.*

Fourth: That, under the circumstances, the accused's conduct was of a nature to bring discredit upon the Armed Forces.

MJ: I've already instructed you on indecency and communication [in connection with specification 1]. Does anybody have any question about that?

Apparently not.

(Emphasis added.) Even assuming the language delineated in this specification might be innocent in some circumstances, it was alleged to be indecent in appellant's case. Under our case law, it was not necessary that the circumstances of the utterance be alleged with more particularity to be legally sufficient. *See United States v. Holland,* 12 USCMA 444, 445, 31 CMR 30, 31

(1961); *United States v. Gaskin,* 12 USCMA 419, 421, 31 CMR 5, 7 (1961).

EVERETT, Chief Judge (dissenting):

For the moment, forcefully eject from your memory all of the facts—so vividly set out in the majority opinion—that may be gleaned from the evidence in this case. Instead, focus *solely* on this scenario, stark and unadorned with embellishing circumstances:

A stepfather is standing at the bedside of his young stepdaughter in the family home, and he asks his stepdaughter "if he [can] climb into bed with her."

Is his request indecent?

Likely, you would protest at this point, pleading: "But I need more information! For instance, what are the circumstances under which he makes his request? Is the girl ill? Is she cold? Has she just awakened from a nightmare? Has she heard something outside her window that has frightened her? Is there some other reason why she might need parental comforting? Turning to the stepfather, is he fully clothed or not? Is he making any physical gesture that might further give meaning to his words? Without more information," you assert, almost indignantly, "this language means NOTHING to me."

And you would be right!

## I

Specification 2, that is at issue here, originally alleged:

In that [appellant] did, at Hinesville, Georgia, on or about 11 April 1988, take indecent liberties with Alisha Mannette Rocha, a female under the age of 16 years, not the wife of the said [appellant], by asking the said Alisha Mannette Rocha if he could climb into bed with her.

Defense counsel moved to dismiss this specification on the basis that the act alleged was not legally sufficient to constitute an indecent liberty. Notwithstanding

---

**3.** *Accord United States v. Knowles,* 15 USCMA 404, 35 CMR 376 (1965) (Army Board of Review affirmed holding that specifications did not allege taking indecent liberties, but did allege

communicating indecent language to a child, where accused had made obscene phone calls to 7-year-old girl).

trial counsel's resistance to the motion, the military judge indicated he was inclined to agree with defense counsel on this contention; but he also indicated that he believed that the specification was sufficient to allege "communicating indecent language."

In response, trial counsel urged the military judge to conclude, instead, that the offense of indecent acts with another was alleged. Trial counsel explained that he had concern whether the specification alleged indecent language. To constitute that offense, the specification had to contain language within its four corners that was offensive either by itself or under the circumstances alleged. Because the Government did not believe this specification met those standards, the Government had consciously avoided charging that offense. Therefore, trial counsel urged the military judge not to convert the original specification into that offense but, instead, to convert it into one of committing indecent acts with another.

Nonetheless, the military judge did as he had indicated he was inclined to do: He ruled that the specification set out above did not legally allege committing indecent liberties but that it did allege "communicating indecent language."

At this point, defense counsel again moved to dismiss the specification. This time he asserted that the specification was not legally sufficient to allege indecent language, as trial counsel had pointed out, and that the defense had not been on notice to defend against this charge. As to the latter complaint, the military judge offered the defense a continuance, which the defense declined. On the merits of the motion, though, the military judge overruled counsel's objection.

In the Court of Military Review, appellant renewed his objection to the legal adequacy of the specification to state the offense of communicating indecent language. In response, the court had this to say:

> In our opinion, the military judge correctly denied the motion. *Under the circumstances of this case, particularly the prior sexual abuse of the victim by* *the appellant and the interaction and conversations between the victim and the stepfather,* the language of the specification was indecent and was sufficiently alleged in the specification to be a lesser included offense of the charge originally alleged.
>
> It is clear that the language does not have to be indecent on its face. *The circumstances of the communication must be carefully looked at as well, and must fairly allege libidinous conduct* violating commonly accepted community standards. The military judge correctly denied the motion and correctly discerned that, under the circumstances, the language made out the lesser included offense of communicating indecent language.

Unpub. op. at 2–3 (emphasis added; citations omitted).

## II

Paragraph 89c, Part IV, Manual for Courts–Martial, United States, 1984, explains that " '[i]ndecent' language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought." The Drafters' Analysis indicates that "[t]his paragraph is new and is based on *United States v. Knowles*, 15 U.S.C.M.A. 404, 35 C.M.R. 376 (1965); *United States v. Wainwright*, 42 C.M.R. 997 (A.F.C.M.R.1970). For a general discussion of this offense, *see United States v. Linyear, supra* [3 M.J. 1027 (N.C.M.R. 1977) ]." Manual, *supra* at A21–102 (Change 3).

The parties agree that, in light of the reference to *Wainwright*, the governing principle is that the allegedly indecent language must be itself indecent or, if "not indecent on its face, the necessary implication or innuendo of indecency must be clearly discernible from the four corners of the specification itself." *United States v. Wainwright, supra* at 1000. The misstep in the court below occurred when that court did not limit itself to the four corners

of the specification in looking either for inherently indecent language or for circumstances that would make otherwise innocuous language indecent. Instead, while the opinion refers to the need for the specification to "fairly allege libidinous conduct," it is quite clear that the court actually looked to the evidence of record and to the other specifications facing appellant at trial in order to conclude that the language in the specification was indecent "[u]nder the circumstances of this case."

While this is not entirely clear from the majority opinion, that misstep appears to be repeated in this Court. Concededly, the majority refers to "[t]he four corners of the specification." 31 MJ 57, 60. However, when setting out to rationalize its conclusion of indecency, the majority begins with, "Under the facts of this case ..." 31 MJ at 60. To reiterate, the facts of the case—*viz.*, the evidence of record—have nothing to do with whether the specification sufficiently alleges indecent language. *See United States v. Wainwright, supra.*

Moreover, if the majority does not make this error, it is unclear from its opinion what the basis is for its affirming the adequacy of this specification. Does the majority find the language *itself* indecent, or does it rely on *alleged circumstances* to infer indecency?

If it is the *language* that the majority relies upon, is the majority opinion truly to be read for the proposition that a parent, who asks his young child "if he could climb into bed with her" in the nighttime and in the family home, is asking something that is *inherently indecent?* This is a parent, in the family home, talking to a child of tender years—not a total stranger, in a school playground. The opening segment of this opinion illustrates—but certainly does not exhaust—rather common instances in which such a comforting offer might be made under quite innocent circumstances. Has this Court become so jaded by the onslaught of child-abuse cases that we infer—in knee-jerk fashion—that such a

request *must* be indecent under *all* circumstances?

And if the *circumstances* are the key, what are the circumstances alleged in the specification that are relied upon by the majority to taint this otherwise innocuous request as indecent? There simply is none.

In his separate concurring opinion, Judge Sullivan appears to rely upon the allegation in the specification that the language was "indecent" as sufficient to meet appellant's challenge. He correctly cites *United States v. Holland*, 12 USCMA 444, 445, 31 CMR 30, 31 (1961), and *United States v. Gaskin*, 12 USCMA 419, 421, 31 CMR 5, 7 (1961), for this proposition. In my view, though, this allegation adds nothing.

Whether the language was "indecent" is the *conclusion* that must be reached before an accused can be convicted. Indeed, the Court in *Holland* acknowledged as much when it observed that "the allegation ['indecently'] actually *defines the character* of the accused's act." 12 USCMA at 445, 31 CMR at 31 (emphasis added). But that conclusion will be *based upon* the *words* uttered and the *circumstances* under which they were communicated. It is the words themselves (if they are *per se* indecent)—and, if necessary, the circumstances (if the words are not *per se* indecent)—that must be alleged, not the conclusion. Alleging the *conclusion* of indecency is not tantamount to alleging either *words* that are indecent or *circumstances* under which words were uttered that make them indecent. While the decision reached in *Holland* supports Judge Sullivan's view, its rationale does not.

Indeed, the very case acknowledged by the majority as the authoritative and definitive case upon which this Article 134 crime is based—*United States v. Wainwright, supra*—is to the contrary. While the majority opinion quotes extensively from that opinion, the following portion of that opinion (not quoted by the majority) is critical at this point:

We are not prepared to conclude, however, that expressions otherwise barren

of libidinous innuendo, when given their ordinary meaning, can be infused with criminality by the simple expedient of alleging them to be indecent. In short, words of pleading designed to impart criminality "cannot serve to supply an otherwise missing element of the offense." *United States v. Fleig, supra,* at page 65 [16 USCMA 444, 445, 37 CMR 64, 65 (1966).

*Id.* at 1000.

As the majority correctly acknowledges, "Specifications which are challenged immediately at trial will be viewed in a more critical light than those which are challenged for the first time on appeal. *See United States v. Bryant,* 30 MJ 72, 73 (CMA 1990); . . ." 31 MJ at 59. Appellant challenged this specification vigorously at trial and has done so relentlessly on appeal; indeed, even the prosecution at trial expressed a view similar to appellant's as to the adequacy of this specification to allege indecent language. With all due respect, I suggest that even a casual consideration— much less a critical one—compels such a view.