UNITED STATES, Appellee,

v.

Sergeant Richard D. DUDDING, 541–86–8194, United States Army, Appellant.

ACMR 9100162.

U.S. Army Court of Military Review.

26 March 1992.

**976**

For Appellant: Dan R. Hyatt, Esquire (argued), Captain Michael W. Meier, JAGC (on brief).

For Appellee: Major Joseph C. Swetnam, JAGC (argued), Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC (on brief).

Before De GIULIO, HAESSIG, and ARKOW Appellate Military Judges.

## OPINION OF THE COURT

De GIULIO, Senior Judge:

Appellant was tried by a general court-martial composed of officer members. Pursuant to his pleas, he was found guilty of rape, sodomy, communicating a threat, two specifications of indecent language to a child, and four specifications of indecent acts with a child, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934 (1982). He was sentenced to a dishonorable discharge, confinement for forty years, total forfeitures, and reduction to Private E1. Complying with a pretrial agreement initiated by appellant, the convening authority reduced the confinement to twenty years but otherwise approved the sentence.

Appellant alleges that the military judge erred by finding him guilty of two specifications of indecent language, that he was denied a fair trial because of improper comments by the military judge before the members, that it was plain error for the military judge to permit an expert to testify on the effects of sexual abuse on children in general and make a recommendation of incarceration for the appellant, and that the sentence is inappropriately severe. We find no merit in appellant's assertions and affirm.

This case involves the sexual abuse of appellant's stepdaughter. In November 1988, appellant married the victim's mother. In January 1989, while stationed in Germany, he began sexually molesting his stepdaughter, B, age seven. His acts included fondling her vagina while he masturbated, rubbing his penis on her vagina while masturbating and ejaculating on her, and inserting his finger in her vagina. The acts also involved anal sodomy and rape. The abuse continued after appellant was transferred to Fort Ord, California, in June 1989. In an attempt to keep his misconduct hidden, appellant threatened to hurt B, her mother, and her brother if B told anyone of the sexual abuse. In March of 1990, B told her nine-year-old cousin of appellant's acts which resulted in the matter being reported to authorities and appellant's subsequent court-martial.

### I.

#### Indecent Language

One specification alleges that on diverse occasions between 1 January and 20 June 1990, appellant communicated indecent language to B, her mother, and another, by stating that, "[B] is nothing but a little cunt." Another specification alleges that on Christmas Day 1989, appellant communicated indecent language to B by stating, "You are a bitch."

During the providence inquiry, appellant stated that on several occasions during the time alleged, he got mad at B and stated the language alleged in the first specification. A stipulation of fact discloses that appellant habitually referred to B as a "cunt." After being informed of the prop-

er definition by the military judge, appellant admitted this language was indecent.

Further, appellant also stated that on Christmas Day 1989, when the children were "running around getting into everything," he told them to stop. He then told B, his now eight-year-old stepdaughter, "You're a little bitch." Appellant admitted this language was indecent.

Before us, appellant alleges that the military judge improperly found him guilty of these offenses, contending that the language was not obscene. He supports his arguments by citing *United States v. French*, 31 M.J. 57 (C.M.A.1990), for the proposition that the language must be calculated to corrupt morals or incite libidinous thoughts. He also contends that indecent is synonymous with obscene and therefore must meet the test of " 'whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests,' " citing *Roth v. United States*, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498 (1957).[1] He concludes that, although the language is ill-advised, it does not meet these tests. Although we agree with appellant's authority, we disagree with his conclusion.

█ We first must determine if the specifications are sufficient to state offenses. Specifications which are challenged immediately at trial will be viewed more critically than those challenged for the first time on appeal. *French*, 31 M.J. at 59; *see also United States v. Brecheen*, 27 M.J. 67, 68 (C.M.A.1988); *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A.1986). In determining the adequacy of an indecent language specification, a number of factors have been considered, to include fluctuating community standards, the personal relationship existing between the speaker and the listener, and the probable effect of the communication as taken from the four corners of the specification. *French*, 31 M.J. at 60. Another factor when a child is involved is the age of the child. *Id.* at 59. The test adopted by the Court of Military Appeals is " 'whether the particular language is calculated to corrupt morals or excite libidinous thoughts.' " *Id.* at 60.

█ In the case before us, appellant's language was directed to and concerned a seven-to-eight-year-old female child. Appellant was sexually abusing the child. The term "bitch" is defined as a lewd or immoral woman or a malicious, spiteful, domineering woman. *Webster's New Collegiate Dictionary* 113 (1977). "Cunt" is defined as the female pudenda and is usually considered obscene. *Id.* at 278. We find appellant's language to his stepdaughter was grossly offensive to decency and propriety and shocks the moral sense because of its vulgar, filthy, and disgusting nature in violation of community standards. *See* Manual for Courts–Martial, United States, 1984, Part IV, para. 89c. We find that calling a seven- or eight-year-old female child "a bitch" and "a cunt" is certainly indecent in the military community. We hold that the specifications are sufficient to state an offense.

█ Turning now to the guilty plea inquiry, we must determine if a proper factual basis was established to support the pleas of guilty. *See United States v. Davenport*, 9 M.J. 364 (C.M.A.1980); *United States v. Care*, 40 C.M.R. 247 (C.M.A.1969). In addition to our prior discussion, we note that appellant could have contested the offense and the meaning of his language by a plea of not guilty. He chose not to do so. Appellant acknowledged the indecency of his language by his guilty plea and his admissions in the providence inquiry. A proper factual basis was established and the pleas of guilty were provident. Appellant was properly found guilty of communicating indecent language.

## II.

### Comments by the Military Judge

During the sentencing proceeding, a clinical social worker testified for appellant. He testified that appellant was a regressed

---

1. See *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 496–99, 105 S.Ct. 2794, 2797–800, 86 L.Ed.2d 394 (1985), for a recent discussion of *Roth*.

pedophile. He also testified that appellant had a narcissistic personality disorder which is nearly universal among sex offenders. In response to questioning by the military judge, he defined the disorder as an egocentric view that a person has the right to have his needs met in a way that other people would see as somewhat unreasonable or very unreasonable. The following colloquy occurred:

[MJ] And how does that particular disorder relate to child sexual abuse?

A. Well, if you think about somebody having the position that, essentially, their needs are more important than someone else's needs, it makes it more possible then to say, "I'm going to do something to you that you don't like because its going to meet a need of mine." So that's why it's so common to find sex offenders have that diagnosis because the act itself is a narcissistic act. "I'm going to do something you're uncomfortable with or don't like or that hurts you in order to meet some of my own needs."

[MJ]. Does Saddam Hussein have a Narcissistic Personality Disorder?

A. Among others, yes. Actually,—

[MJ]. Well, I don't want to get into that.

A. Okay.

MJ: Any other questions?

A. Maybe another point of clarification that may be helpful for you—

[MJ]. Go ahead.

The testimony continued with other explanatory remarks.

Appellant contends the military judge abandoned his impartial role and that the question of the military judge resulted in a "comparison of appellant to Saddam Hussein, one of the most hated and vilified leaders (often compared to Adolph Hitler) before the members." He further contends that the gravity of the error is demonstrated by the adjudged sentence to confinement for forty years.

■ It is true that the military judge must not abandon his impartial role and assist the prosecution of the accused. *United States v. Reynolds*, 24 M.J. 261 (C.M.A.1987); *United States v. Lindsay*,

30 C.M.R. 235 (C.M.A.1961). He does not, however, abandon his impartial role by asking questions to clarify factual uncertainties. *Reynolds*, 24 M.J. at 264; *United States v. Hobbs*, 8 M.J. 71 (C.M.A.1979).

■ In the case before us, we disagree with appellant's view of the military judge's questions. A reading of the record shows that the expert's definition was not clear and that the military judge's questions were asked for the purpose of clarification of the social worker's explanation of a narcissistic personality disorder. Although the military judge might have selected a better example, his question did not compare appellant to Saddam Hussein but made the explanation of the disorder more understandable to the court. Indeed, the military judge's question must not have been viewed at trial in such a shocking and prejudicial fashion as now represented by appellant before us, because trial defense counsel neither objected to it nor did he move for a mistrial. *Cf. United States v. Hooks*, 24 M.J. 713, 719 n. 10 (A.C.M.R. 1987), *petition denied*, 26 M.J. 39 (C.M.A. 1988).

### III.

#### The Testimony of the Expert Witness

The same social worker testified for appellant that appellant was a good candidate for group therapy. At the request of appellant the social worker testified out of order. The essence of his testimony was that therapy was the answer to appellant's ills and extended confinement, if at all, was not. Major M, another social worker, testified for the prosecution after the defense social worker. There was no objection to his testimony. Although Major M may have been scheduled to testify in aggravation, in fact, much of his testimony was presented in rebuttal to the defense witness.

Major M testified that the U.S. Disciplinary Barracks has a comprehensive treatment program for sex offenders. Appellant contends that Major M improperly rec-

ommended incarceration of appellant by the following:

Q. Sir, at the beginning we talked briefly about the factors for, the factors described in Segroy and Groth's literature. If you had [a] case where you have a confessed offender and yet you have an anal sodomy, a victim who refuses or declines, expresses no desire to return to the home with the offender, and you also have the threat of force, what would be your opinion as to the prognosis for institutionalization or diversion?

A. Based on those factors, I would recommend institutionalization.

 Under the circumstances before us we find the testimony was not improper. Although Major M may have been scheduled to testify in aggravation, we must take the record as we find it. After reviewing the defense expert's testimony, we find the crux of it was to steer the court members away from confinement and toward therapy. This opened the door for the prosecution's expert, Major M, to testify that institutionalization was more appropriate. Although treatment programs for sex abusers during confinement are collateral consequences of a sentence and not admissible in aggravation, evidence of those programs is proper rebuttal. *United States v. Flynn*, 28 M.J. 218 (C.M.A.1989); *United States v. Lapeer*, 28 M.J. 189 (C.M.A.1989). This equally applies to whether an accused should be confined or the length of confinement to be imposed. We find no error where the expert's testimony concerning institutionalization was presented to rebut a defense expert's testimony which tended to recommend therapy rather than confinement.

Of approximately eighteen pages of testimony of Major M, one-half page addresses the subject of the impact of sexual abuse upon victims in general. This evidence was presented after another witness testified to the specific impact of appellant's acts upon B. Again, we note there was no objection to this testimony at trial. Appellant as-

serts that it was plain error to allow the testimony of this expert on the effects of sexual abuse on children in general.

 Evidence of the impact of an accused's act on a specific victim is clearly admissible. *Payne v. Tennessee*, — U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *United States v. Fontenot*, 29 M.J. 244 (C.M.A.1989). Testimony that generally addresses other aspects of victim impact is admissible. *United States v. Holt*, 33 M.J. 400, 409 (C.M.A.1991); *United States v. Hammond*, 17 M.J. 218 (C.M.A.1984). The testimony is particularly admissible here, where it is generally consistent with the testimony of the expert who testified as to the impact of appellant's acts on B. Even assuming error, the brevity of the testimony on this issue, coupled with its cumulative nature, renders it harmless. In any event, failure to object waived the issue. *Holt*, 33 M.J. at 409.

## IV.

### Sentence Appropriateness

Appellant alleges that the sentence is inappropriately severe. In support of his allegation he has appended to his brief lists of cases which he desires us to consider.[2] Considering all the circumstances of this case, to include the age of the victim, appellant's course of conduct over a one year period which started shortly after appellant married B's mother, the impact of appellant's acts on the victim, and the nature of the offenses, we find the sentence is appropriate.

The findings of guilty and the sentence are affirmed.

Judge HAESSIG and Judge ARKOW concur.

---

2. Although this Court is not required to consider such matters (*see United States v. Ballard*, 20 M.J. 282 (C.M.A.1985)), the proper method to submit extra-record matters to this Court is by motion. Because civilian counsel may be unfamiliar with practice before this Court, we will consider the appendices. In the future, however, an appropriate motion should be utilized.