**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Airman Basic WILLIAM P. SMITH JR.**
**United States Air Force**

**ACM 38728**

**17 May 2016**

Sentence adjudged 12 July 2014 by GCM convened at Keesler Air Force Base, Mississippi. Military Judge: Shaun S. Speranza.

Approved Sentence: Bad-conduct discharge.

Appellate Counsel for Appellant: Major Isaac C. Keenen.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez; Major Mary Ellen Payne; and Gerald R. Bruce, Esquire.

Before

MITCHELL, DUBRISKE, and BROWN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

BROWN, Judge:

At a general court-martial composed of officer and enlisted members, Appellant was convicted, contrary to his pleas, of two specifications of communicating indecent language, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1] The court sentenced Appellant to a bad-conduct discharge.

---

[1] Appellant was found not guilty of abusive sexual contact, aggravated sexual contact, an additional specification of indecent language, assault consummated by a battery, and disorderly conduct, in violation of Articles 120, 128, and 134, UCMJ, 10 U.S.C. §§ 920, 928, 934. These offenses all involved the same alleged victim, who was not the named victim in the indecent language specifications Appellant was convicted of at trial.

On appeal, Appellant contends: (1) the evidence is factually insufficient to sustain one of the indecent language convictions, (2) the military judge's standard beyond-a-reasonable-doubt instruction was erroneous, and (3) the prosecutor erred in referencing that purported erroneous instruction during findings argument. We disagree and affirm the findings and sentence.

## Background

Appellant was an Airman Basic (E-1) assigned to Keesler Air Force Base (AFB), Mississippi, as a technical school student. Both indecent language specifications involved sexually explicit comments he made to female technical school students in March and April of 2013.

As to the specific incident relevant to this appeal, it occurred on Keesler AFB in the food court at the Base Exchange (BX). On the afternoon of 3 April 2013, the victim and a female friend, A1C VC, went to a sandwich shop at the BX. They were both in civilian clothes and sat down in a less populated portion of the food court to eat their meal.

Appellant, who was in uniform at the time, approached them and sat down at a table next to them. Appellant was approximately four to five feet away. Neither the victim nor A1C VC knew Appellant. Appellant asked them their names, where they were from, and if they had boyfriends. When Appellant learned that A1C VC was engaged, he focused his comments and questions more toward the victim. The tone of Appellant's conversations to this point was casual and flirty.

Appellant's tone, however, changed when a male friend of Appellant arrived and sat down across from him. At a volume loud enough to be heard by both the victim and A1C VC, Appellant told his friend, "Doesn't she look like something that you would want to take to a hotel room, tie and tape her up, and have sex with her until she begs, and then maybe if she begs you to stop, then maybe you will stop." He continued by saying he wanted to take pictures of the victim while she was tied up and post the pictures on Facebook with a comment saying, "This is mine." While Appellant was talking, he was glancing toward the victim and making eye contact. The victim testified she believed these comments were directed toward her—both because they referenced her and Appellant was making eye contact with her while he was talking. The victim and A1C VC were both shocked and offended by the comments. The victim was scared by Appellant's comments.

## Factual Sufficiency

Although Appellant does not contest that he made the statements attributed to him, he argues the statements were not indecent for two reasons: (1) Appellant was speaking to his friend rather than the victim, and (2) the statement was not indecent considering the Air Force community standards as a whole.

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Uttering indecent language is not specifically enumerated in the UCMJ as a criminal offense, but it is punishable under Article 134, UCMJ. In the *Manual for Courts-Martial, United States* (*MCM*), the President prescribed the elements which the Government was required to prove beyond a reasonable doubt in order to establish its case against Appellant:

> (1) That the accused orally or in writing communicated to another person certain language;
>
> (2) That such language was indecent; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM*, pt. IV, ¶ 89.b. (2012 ed.); *see also* Department of the Army Pamphlet (D.A. Pam.) 27-9, *Military Judges' Benchbook*, ¶ 3-89-1.c. (1 January 2010).

Indecent language is defined as, "that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought." *MCM*, pt. IV, ¶ 89.c. It must also be calculated to corrupt morals or incite libidinous thoughts. *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F. 1998) (quoting *United States v. French*, 31 M.J. 57, 60 (C.M.A. 1990)). The language must be evaluated in the circumstances under which the charged language was communicated. *See id.* (holding profanity did not constitute indecent language where it was intended to express rage rather than sexual desire).

To be indecent, the language must violate community standards. *MCM*, pt. IV, ¶ 89.c. When determining whether certain language violates community standards, it is appropriate to consider the larger Air Force worldwide community. *United States v. Baker*, 57 M.J. 330, 339 (C.A.A.F. 2002).

Here, Appellant had only met the victim moments before he made the statement. He used the language in a public eating area, on base, while he was in uniform. Based on their interactions to that point, there was nothing to suggest that the victim welcomed the statement or considered it appropriate. Appellant, though ostensibly talking to his friend, made eye contact with the victim as he made the statement and talked loudly enough for the victim to hear him. This was not a private conversation between friends that was inadvertently overheard by a passerby—it was a sexually charged statement that Appellant directed toward *both* his friend and the victim. It was a statement calculated to corrupt morals and incite libidinous thoughts.

Appellant, both at trial and on appeal, further argued that these statements did not violate community standards of decency. To this end, the Defense introduced evidence of sexually explicit books, songs, magazines, and movies that were sold at the BX. Appellant also points to the testimony of several witnesses, to include A1C VC, regarding their hearing similar sexual comments by others in the past. Despite Appellant's reliance on this testimony, there were few specifics about these other purportedly similar comments and no testimony regarding the context of when and where the statements were made.

We are convinced that Appellant's language in this case, considering the facts and circumstances surrounding its utterance, violated the standards of the larger Air Force worldwide community. Both A1C VC and the victim testified they were shocked by the comments of someone they viewed as a stranger. Though we acknowledge that some people in the military may have heard similar statements under different circumstances, there was nothing to suggest that the community standards are such that statements similar to the ones here are frequently exchanged by strangers, in uniform, on base, and in public. Further, the availability of sexually explicit materials in a base library, or for sale at the BX, does not deter us from this conclusion. One's ability to purchase sexually explicit media for private consumption is a far cry from what occurred here.

We are not persuaded by Appellant's argument that his statements here did not constitute indecent language. Weighing all the evidence admitted at trial and mindful of the fact that we have not heard the witnesses, this court is convinced beyond a reasonable doubt that Appellant is guilty of the offense.

*Beyond a Reasonable Doubt Instruction*

During voir dire and prior to deliberations on findings, the military judge instructed the members as follows with respect to proof beyond a reasonable doubt:

> A "reasonable doubt" is a conscientious doubt based upon reason and common sense, and arising from the state of evidence. Some of you may have served as jurors in civil cases, or as members of an administrative boards, where you

were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the accused's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the accused is guilty of any offense charged, you must find him guilty. If, on the other hand, you think there is a real possibility that the accused is not guilty, you must give him the benefit of the doubt and find him not guilty.

In addition, during trial counsel's rebuttal argument in findings, trial counsel reread the military judge's beyond a reasonable doubt instruction to the members. At no point did Appellant object to the military judge's instruction, which is the standard Air Force instruction on proof beyond a reasonable doubt.[2]

It is the military judge's duty to properly instruct the members at trial. *See United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001). We review de novo the military judge's instructions to ensure that they correctly address the issues raised by the evidence. *United States v. Maynulet*, 68 M.J. 374, 376 (C.A.A.F. 2010). In examining instructions provided by the military judge, an appellate court examines "whether the instruction as a whole provides meaningful legal principles for the court-martial's consideration." *United States v. Truman*, 42 C.M.R. 106, 109 (C.M.A. 1970). "The military judge has considerable discretion in tailoring instructions to the evidence and law. *United States v. Hopkins*, 56 M.J. 393, 395 (C.A.A.F. 2002).

Where, as here, trial defense counsel made no challenge to the instruction now contested on appeal, the appellant has forfeited the objection in the absence of plain error.[3] Rule for Courts-Martial (R.C.M.) 920(f). If we find error, we must determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011).

Appellant now argues on appeal that this instruction, as recited by the military judge and argued by the prosecutor, violates Supreme Court precedent prohibiting a trial judge

---

[2] Though Appellant asserts that the Defense did object to trial counsel's recitation of this instruction during the findings argument, a review of the record refutes this. A careful reading of the record reveals that the objection was to trial counsel's characterizing the Defense as improperly asking the members to speculate about information and testimony not offered into evidence. Appellant did not raise this as an issue on appeal.

[3] Although we recognize that the rule speaks of "waiver," this is in fact forfeiture. *United States v. Sousa*, 72 M.J. 643, 651 (A.F. Ct. Crim. App. 2013).

from "directing the jury to come forward with a [guilty verdict]." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73 (1977).

The military judge did not attempt to override or interfere with the court members' independent judgement. The members retained their authority to determine the amount of evidence that they—rather than the military judge—believed constituted sufficient evidence to prove an element beyond a reasonable doubt. The military judge directed the members to return a finding of guilty *if* the members determined that the Government had proven the accused's guilt beyond a reasonable doubt. In other words, the military judge instructed the members to follow and apply the law.

Appellant, however, argues that the members have the authority to disregard the law and return a finding of not guilty regardless of whether they conclude that the Government has proven each element beyond a reasonable doubt—a concept commonly referred to as jury nullification. In *United States v. Hardy*, however, the Court of Appeals for the Armed Forces held that a court-martial panel does not have the right of jury nullification or "have the *right* to nullify the lawful instructions of a military judge." 46 M.J. 67, 75 (C.A.A.F. 1997) (emphasis added).

Furthermore, the language used by the military judge in Appellant's case is—and has been for many years—an accepted reasonable doubt instruction used in Air Force courts-martial. *See, e.g., United States v. Sanchez*, 50 M.J. 506, 509 (A.F. Ct. Crim. App. 1999); *United States v. Taylor*, ACM 38700, unpub. op. at 23–24 (A.F. Ct. Crim. App. 25 February 2016); *United States v. McClour*, ACM 38704, unpub. op. at 16–17 (A.F. Ct. Crim. App. 11 February 2016); *see also United States v. Gibson*, 726 F.2d 869, 873–74 (1st Cir. 1984) (upholding similar language). The very language used by this military judge, that became the standard beyond a reasonable doubt instruction for the Air Force, was also offered by our superior court as a suggested instruction. *See United States v. Meeks*, 41 M.J. 150, 157–58 n.2 (C.M.A. 1994) (citing Federal Judicial Center, Pattern Criminal Jury Instruction 17-18 (1987)).

Based on this legal landscape, we cannot say that the military judge committed error, plain or otherwise, in his reasonable doubt instruction. In addition, for these same reasons, it was also not error for trial counsel to recite the military judge's instruction during the findings rebuttal argument.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c).

ACM 38728

Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM 38728