*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Alan S. GUARDADO, Master Sergeant**
United States Army, Appellant

**No. 17-0183**
Crim. App. No. 20140014

Argued October 10, 2017—Decided December 12, 2017

Military Judge: Rebecca K. Connally

For Appellant: *Robert A. Feldmeier*, Esq. (argued); *Captain Michael A. Gold* and *James S. Trieschmann,* Esq. (on brief).

For Appellee: *Captain Austin L. Fenwick* (argued); *Colonel Mark H. Sydenham, Lieutenant Colonel A. G. Courie III*, and *Major Michael E. Korte* (on brief); *Captain Samuel E. Landes*.

Chief Judge STUCKY delivered the opinion of the Court, in which Judges RYAN, OHLSON, and SPARKS, and Senior Judge COX, joined.

————————

Chief Judge STUCKY delivered the opinion of the Court.

The United States Army Court of Criminal Appeals (CCA) held that, in light of *United States v. Hills*, 75 M.J. 350, 357 (C.A.A.F. 2016), the military judge committed error in instructing the court members in Appellant's case that they could consider evidence of charged offenses to establish Appellant's propensity to commit other charged offenses, but that the error was harmless. *United States v. Guardado*, 75 M.J. 889, 891 (A. Ct. Crim. App. 2016). We granted review to determine: (1) if the military judge's erroneous panel instructions were indeed harmless; and (2) whether an offense defined by the President can preempt an Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012), general disorder offense. We hold: (1) that the erroneous propensity instruction was not harmless; and (2) that the government may not charge a general disorder offense if

the offense is otherwise listed as an Article 134, UCMJ, offense. Therefore, we reverse in part.

## I. Procedural History

Appellant faced a number of charges involving sexual misconduct with children. Contrary to his pleas, a general court-martial with enlisted representation convicted him of one specification of aggravated sexual contact with a child, three specifications of indecent liberties with a child, three specifications of battery of a child, four specifications of committing a general disorder, one specification of indecent assault, one specification of indecent acts, and one specification of using indecent language with a child, in violation of Articles 120, 128, and 134, UCMJ, 10 U.S.C. §§ 920, 928, 934 (2000 & Supp. V 2006; 2006; 2006 & Supp. I 2008). The panel acquitted Appellant of one specification of rape, one specification of indecent liberties with a child, one specification of wrongful sexual contact, and one specification of assault consummated by a battery.

The court-martial sentenced Appellant to confinement for eight years, forfeiture of all pay and allowances, and a reduction in grade to E-1. The convening authority approved the sentence and ordered it executed. The CCA partially affirmed the findings, dismissing several specifications on grounds of multiplicity or unreasonable multiplication of charges. Specifically, the CCA dismissed one specification of assault consummated by a battery upon a child under the age of sixteen and two specifications alleging general disorders under Article 134. *Guardado*, 75 M.J. at 907. The CCA also dismissed one specification of assault consummated by a battery upon a child under the age of sixteen and one specification of indecent assault conditioned on the Specification of Additional Charge I (assault on a child) and Specification 1 of Additional Charge II (indecent act on a child) surviving final judgment as to the legality of the proceedings. *Id.* The CCA affirmed only so much of the sentence as provided for confinement for seven years and eight months, forfeiture of all pay and allowances, and reduction in grade to E-1. *Id.*

## II. Background

The charges against Appellant arose from several distinct incidents of sexual misconduct which spanned more than a dozen years.

The most serious charge of which Appellant was convicted was a sexual assault he committed against his daughter, KG, on her tenth birthday in 2008. As they drove to pick up party supplies for her birthday party, Appellant shoved his hand down his daughter's pants and touched her genitals. The members convicted Appellant of aggravated sexual contact with a child.

In another instance, Appellant accompanied his niece, BR, on an errand to Walmart during a family reunion. Instead of driving directly to Walmart, Appellant drove BR to his hotel and asked her to help him retrieve something from his room. Upon entering the room, Appellant locked the door, blocked the exit, and insisted that BR remove her pants. After repeated refusals, Appellant grabbed her by the pants and attempted to unbutton them himself. For this conduct, members convicted Appellant of battery of a child, indecent assault, and indecent acts.

Appellant did not limit his attentions to his daughter and niece. Appellant also targeted teenagers he met while coaching a girls' soccer team from 2007 to 2010. Several team members came forward to accuse Appellant of indecent and inappropriate conduct, namely telling them about his swinger lifestyle, asking them about their sexual histories and whether they shaved their genitals, making inappropriate comments about their bodies, and suggesting they work at a strip club called Teasers so he could watch them perform. One player, SW, testified that Appellant once touched her on her bare thigh while driving. Another player, CH, testified that on more than one occasion, Appellant rubbed his body against hers in an inappropriate way, pressing his penis against her buttocks. For these acts, the panel convicted Appellant of indecent liberties with a child, battery, indecent language, and general disorders. The panel acquitted Appellant of the specifications arising from his alleged touching of CH.

In addition to crimes against children, Appellant was also charged with the 1994 rape of VC, a fellow soldier at Fort Rucker. The panel acquitted Appellant of this charge.

On appeal, Appellant argues that he suffered prejudice due to instructional errors. At trial, the military judge advised the panel members that they could use evidence of each offense alleged in Specifications 1, 6, 7, and 8 of Charge I to prove Appellant's propensity to commit the other three. These specifications all related to inappropriate touching and concerned the molestation of Appellant's daughter, KG; the rape of a fellow soldier, VC; and sexual contact with one of his soccer players, CH.

### III. Law and Discussion

### A. Harmlessness of instructions

"Instructional errors are reviewed de novo." *Hills*, 75 M.J. at 357. As Appellant failed to object to the military judge's propensity instruction at trial, we review for plain error. *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017) ("[T]he language of R.C.M. 920(f) … and the great weight of our precedent clearly call for plain error review" when an appellant fails to preserve an instructional error.); *see* Rule for Court-Martial (R.C.M.) 920(f) ("Failure to object to an instruction … constitutes waiver … in the absence of plain error.").

This Court has repeatedly held that plain error occurs when: (1) there was error, (2) such error was clear or obvious, and (3) the error materially prejudiced a substantial right of the accused. *United States v. Feliciano*, 76 M.J. 237, 240 (C.A.A.F. 2017); *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014). The burden lies with Appellant to establish plain error. *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008).

At trial, the military judge instructed the panel that they could consider evidence of four specifications of charged conduct "for its bearing on any matter to which it is relevant in relation to those same offenses," including Appellant's "propensity or predisposition to engage in sexual assault." Of the four offenses for which propensity evidence was allowed, Appellant was convicted of only one—Specification 1 of

Charge I, the aggravated sexual contact offense against his daughter. Appellant was acquitted of the other three specifications, all of which stemmed from alleged misconduct against other victims.

"In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant." Military Rule of Evidence (M.R.E.) 413(a); *see* M.R.E. 414(a) (providing for similar admission of evidence of child molestation). "This includes using evidence of either a prior sexual assault conviction or uncharged sexual assaults to prove that an accused has a propensity to commit sexual assault." *Hills*, 75 M.J. at 354 (citing *United States v. James*, 63 M.J. 217, 220–22 (C.A.A.F. 2006)). The rules do not extend to instances of charged conduct, however, for "[i]t is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent." *Id.* at 356. Accordingly, in *Hills*, we held that using charged misconduct as M.R.E. 413 evidence was an abuse of discretion and that the military judge's attendant instructions "constituted constitutional error that was not harmless beyond a reasonable doubt." *Id.* at 353. Since *Hills*, we have clarified that the prohibition against using charged conduct as "propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected." *United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017).

In this case, it is indisputable that the military judge gave an instruction that violated our holding in *Hills*. While we do not fault the military judge for issuing this instruction, for *Hills* was decided after Appellant's court-martial, we test those unobjected-to instructions for plain error based on the law at the time of appeal. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011). Given our holdings in *Hills* and *Hukill*, the military judge's M.R.E. 413/414 instruction constituted clear or obvious error under the law as it exists today. The question we must answer is whether this instruc-

tional error materially prejudiced Appellant's substantial rights.

Here, the Government argues that no prejudice ensued as Appellant was acquitted of three of the four specifications for which the military judge allowed propensity evidence. The CCA, reasoning that "[i]f the panel did not believe the other offenses happened, there is little danger they would rely on an impermissible propensity inference," agreed and concluded that Appellant suffered no prejudice as to Specification 1 of Charge I. *Guardado*, 75 M.J. at 898–99. We disagree.

We are not convinced that any harm that resulted from allowing propensity evidence from one specification was necessarily extinguished by an acquittal of that same specification. It simply does not follow that because an individual was acquitted of a specification that evidence of that specification was not used as improper propensity evidence and therefore had no effect on the verdict. It is conceivable that the panel found that Appellant committed the other three charged offenses by a preponderance of the evidence but not beyond a reasonable doubt. While not persuaded of Appellant's guilt to the point of convicting him, members could still have believed that it was more likely than not that Appellant sexually assaulted SW and CH and used that evidence for propensity purposes, thus violating Appellant's presumption of innocence. Such an outcome is exactly the type of result we sought to guard against in *Hills*.

Furthermore, we cannot escape the conclusion that Appellant suffered prejudice from the confusing nature of the military judge's instructions. As in *Hills*, the military judge instructed the members as to two different standards of proof that they were required to apply to the same evidence. First, the military judge instructed the members that they could consider evidence of charged offenses for propensity purposes if they determined by a preponderance of the evidence that the alleged offenses occurred. Next, she attempted to clarify the Government's burden of proof and reminded the panel that Appellant enjoyed a presumption of innocence. However, although she reiterated several times that proof of one sexual assault creates no inference of guilt as to the other sexual assaults, her spillover instruction was qual-

ified and still allowed members to consider Appellant's "propensity to commit that type of offense." As in *Hills*:

> [t]he instructions in this case provided the members with directly contradictory statements about the bearing that one charged offense could have on another, one of which required the members to discard the accused's presumption of innocence, and with two different burdens of proof—preponderance of the evidence and beyond a reasonable doubt."

75 M.J. at 357. These "muddled … instructions implicate 'fundamental conceptions of justice' under the Due Process Clause" and raise "the risk that the members would apply an impermissibly low standard of proof." *Id.* As "[t]he juxtaposition of the preponderance of the evidence standard with the proof beyond a reasonable doubt standard with respect to the elements of the same offenses would tax the brain of even a trained lawyer," *Id.* at 358, we cannot deny that the potential for confusion among members was high. We simply cannot say "that Appellant's right to a presumption of innocence and to be convicted only by proof beyond a reasonable doubt was not seriously muddled and compromised by the instructions as a whole." *Id.* at 357.

This is especially true given the nature of the Government's case. In reviewing the factual sufficiency of the case, the CCA found itself "entirely convinced" of Appellant's guilt and concluded that the result of the trial would have been the same even in the absence of the erroneous propensity instruction. We do not share the CCA's confidence.

There are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by "tipp[ing] the balance in the members' ultimate determination." *Hills,* 75 M.J. at 358.

This is not such a case. While we will not disturb the CCA's finding that KG's testimony was credible, the lack of supporting evidence makes it difficult to be certain that Appellant was convicted of Specification 1 of Charge I on the strength of the evidence alone. Although it is certainly possible that the members convicted Appellant based solely on the testimony of his accusers, we are not convinced that the erroneous propensity instruction played no role in Appel-

lant's conviction. Accordingly, under the circumstances of this case, we are unable to conclude that the military judge's M.R.E. 413/414 instruction was harmless.[1]

## B. Novel Charge under Article 134, UCMJ

Next, we address Appellant's contention that the general disorder offenses of which he was convicted were, in fact, preempted. Specifically, Appellant claims that the President's articulation of an Article 134, UCMJ, offense of indecent language precludes the Government from charging him with a novel Article 134, UCMJ, general disorder offense arising from sexually charged comments he made to teenage girls while coaching soccer.

The President has unequivocally stated that "[t]he preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132." *Manual for Courts-Martial, United States* (*MCM*) pt. IV, ¶ 60.c.(5)(a) (2012 ed.). In other words, the preemption doctrine only "prohibits the government from using Article 134, UCMJ, to charge offenses that are listed in the UCMJ *outside* of Article 134." *United States v. Reese*, 76 M.J. 297, 302 (C.A.A.F. 2017). The Government took no such action in this case.

While the doctrine of preemption is inapplicable to this situation, the President has constrained the Government's charging strategy: "[i]f conduct by an accused does not fall under any of the listed offenses for violations of Article 134 in this Manual (paragraphs 61 through 113 of this Part), a specification not listed in this Manual may be used to allege the offense." *MCM* pt. IV, ¶ 60.c.(6)(c). Relying on the plain language of the President's guidance, this Court has held that the government may not charge a "novel" offense if the offense is otherwise listed as an Article 134, UCMJ, offense. *Reese*, 76 M.J. at 302. In other words, if an offense is "already listed *inside* [Article 134's] framework," it may not be charged as a "novel" general disorder offense. *Id.*

---

[1] Appellant also argues that the military judge issued a M.R.E. 404(b) instruction that violated our holding in *Hills*. This argument falls outside the scope of the granted issues, and we decline to address it. *See United States v. Phillips*, 64 M.J. 410, 414 n.* (C.A.A.F. 2007).

In the instant case, the Government referred several "novel" Article 134, UCMJ, specifications against Appellant, two of which remain. Specification 1 of Charge III alleged in pertinent part that:

> [Appellant] wrongfully ask[ed] Ms. SW … about her sexual experiences, what sexual acts she had done, told her she had a nice body, and ma[d]e other sexual comments to her, making her uncomfortable, which conduct, under the circumstances, was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Similarly, Specification 5 of Charge III alleged that Appellant:

> [told] MM[,] while she was assisting him with his soccer team, while she was under 18 years of age, that he and his wife were swingers, meaning [Appellant] and his wife were conducting sexual acts with others at the same time, which conduct, under the circumstances, was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Part IV, para. 89 of the *MCM* already contains an offense of "Indecent language" which lists three elements. The elements of an indecent language offense are:

> (1) That the accused orally or in writing communicated to another person certain language;
>
> (2) That such language was indecent; and
>
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

*MCM* pt. IV, ¶ 89.b. Notably, this offense encompasses language or communications that are sexual in nature. *See United States v. French*, 31 M.J. 57, 60 (C.M.A. 1990) (holding that language is indecent where "the particular language is calculated to corrupt morals or excite libidinous thoughts," so that the appellant's indecent language specification adequately stated an offense where the appellant asked his stepdaughter, who was under the age of sixteen, "if he could climb into bed with her." (internal quotation marks omitted) (citation omitted)). Here, the gravamen of Appellant's Article

134 general disorder specifications was the "sexual" nature of his comments. Despite the clear applicability of the President's listed Article 134 offense, the Government elected not to charge his conduct as such, instead choosing to charge him with two "novel" Article 134 offenses.

Not only is such action barred under pt. IV, ¶ 60.c.(6)(c), but it raises important due process concerns. By using "novel" specifications, the Government relieved itself of the responsibility of proving the second, and arguably most important, element of indecent language—that Appellant's language rose to the level of indecency. In deleting a vital element, the Government, in effect, improperly reduced its burden of proof. Such an outcome illustrates the reason for the limits of pt. IV, ¶ 60.c.(6)(c), and cannot be countenanced.

As Appellant was charged with "novel" Article 134 offenses that could have been charged as Article 134 indecent language offenses, we hold that the "novel" offenses arising from Appellant's indecent language were barred by ¶ 60.c.(6)(c) and, therefore, fail to state an offense under the UCMJ. *See Reese,* 76 M.J. at 302–03.

**IV. Judgment**

The judgment of the United States Army Court of Criminal Appeals is affirmed in part and reversed in part. We affirm the findings as to Specifications 2, 3, and 5 of Charge I, Specification 1 of Charge II, Specification 3 of Charge III, and Specification 2 of Additional Charge II. The finding as to Specification 1 of Charge I is set aside. The findings as to Specifications 1 and 5 of Charge III are likewise set aside and those specifications are dismissed. The sentence is set aside. The record is returned to the Judge Advocate General of the Army with a rehearing on Specification 1 of Charge I and on the sentence authorized.