UNITED STATES

v.

Mark D. HUDSON, 553–27–4749
Personnelman Second Class
(E–5), U.S. Navy.

NMCM 92 02467.

U.S. Navy–Marine Corps Court of
Military Review.

Sentence Adjudged 1 July 1992.

Decided 31 March 1994.

Capt H.W. Frank, USMC, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

LT R.W. Sardegna, JAGC, USNR, Appellate Government Counsel.

Before REED, ORR and DeCICCO, JJ.

DeCICCO, Judge:

Following mixed pleas, appellant was convicted by a special court-martial, military judge alone, of four specifications of orally communicating indecent language over the telephone to various women in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. He was acquitted of three other similar specifications. His sentence included a bad-conduct discharge, confinement for 90 days, restriction for 30 days, and hard labor without confinement for 30 days. The convening authority approved the sentence. Appellant has assigned three errors for our consideration.[1]

Subsequent to the issuance of an earlier opinion in this case on 28 February 1994, we granted appellee's motion for reconsideration. Having reconsidered our earlier decision, we have reached the following revised opinion. Our opinion of 28 February 1994 is hereby withdrawn. We have concluded that no error occurred when the convening authority referred certain specifications to trial by court-martial following nonjudicial punishment for the same offenses, that the language contained in two of the specifications for which appellant was convicted was not indecent, and, upon reassessment, that the sentence is unduly severe.

*Facts*

The telephone calls that served as the basis for the charges in this case allegedly occurred between October 1990 and January 1991. In July 1991, the Commanding Officer, Mobile Inshore Undersea Warfare Unit 106 imposed nonjudicial punishment upon appellant for five of the seven specifications later referred to court-martial. The nonjudicial punishment included restriction and extra duties for 45 days and reduction to pay grade E-4. The commanding officer suspended 15 days of the restriction and extra duties and the reduction. At a later point, 10 more days of the restriction and extra duties were remitted.

Prior to administering the nonjudicial punishment, appellant's commanding officer discussed the matter with the Chief of Staff and the Commander, Naval Inshore Undersea Warfare Group One, the immediate superior in the chain of command. The commanding officer briefed both the commander and the chief of staff on the charges and how he proposed to handle the matter, even including the punishment he intended to award. Record at 28–29. Both the commander and his chief of staff gave their approval of the commanding officer's proposal and indicated

---

1. I. THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO DISMISS THE ADDITIONAL CHARGE AND ITS SPECIFICATIONS WHERE THE OFFENSES WERE MINOR AND WHERE APPELLANT HAD ALREADY BEEN PUNISHED FOR THE OFFENSES AT AN ARTICLE 15, UCMJ PROCEEDING HELD ELEVEN MONTHS PRIOR.

II. SPECIFICATIONS 2 AND 3 OF THE ADDITIONAL CHARGE FAIL TO ALLEGE LANGUAGE THAT IS, EITHER EXPRESSLY OR BY NECESSARY IMPLICATION, INDECENT.

III. A SENTENCE WHICH INCLUDES A BAD-CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE FOR THIS APPELLANT ON THE FACTS OF THIS CASE.

that a court-martial was not warranted. In fact, the commander "liked" the punishment and added a recommendation that appellant also be directed to write letters of apology to the women involved. Record at 29. The appellant allegedly made these telephone calls to the wives of servicemembers deployed for Operations Desert Shield and Desert Storm. His status as a personnelman allowed him to know which women were home without their husbands, and he made these calls from the command duty office while he was standing duty.

At the nonjudicial punishment hearing, the commanding officer told appellant that appellant could recover from the incident, but he had to "do a 4.0 job" and could continue with his career. Record at 31. According to the commanding officer, appellant complied with everything requested of him and performed admirably for the rest of 1991. In fact, appellant's performance was so outstanding that his senior enlisted supervisors recommended him for promotion to E–6 under the Command Advancement Program. However, when other members of Group One heard of the recommendation, they protested that appellant should not receive such an honor due to his nonjudicial punishment in July and the nature of his offenses. There were threats to call the Navy's "hotline" on sexual harassment and abuse if appellant received the promotion. Record at 31. The Group Commander advised the commanding officer to "wait on this [the promotion], we need to do an investigation." *Id.*

Further investigation resulted in a "new" charge and two specifications alleging communication of indecent language. The Group Commander referred this charge to court-martial on 9 April 1992. An additional charge (supported by the specifications for which appellant had previously been nonjudicially punished) was referred to trial on 5 June 1992. At trial, appellant was acquitted of the "new" charge and both specifications and one of the five specifications under the Additional Charge. Appellant was convicted of four specifications of communicating indecent language to adult women (Specifications 1–4 of the Additional Charge). Appellant pled guilty to Specifications 1 and 4. He

admitted communicating the language "Are you horny?", and "Do you want to do it with me?" and making inquiries as to the color of underwear worn by the women he called. Specification 2 alleged that appellant said "I know where you live," and "I want to be with you" and other language to that effect. Specification 3 alleged appellant communicated the language "I have seen you in your blue dress and love your long and smooth feet," and "I would love to wash and massage your feet," and "You can call me your slave," and other language to that effect.

At trial, the defense moved to dismiss the five specifications for which appellant had previously been punished, citing Rule for Courts–Martial (R.C.M.) 907(b)(2)(D)(iv). Trial defense counsel argued that these offenses were minor and fell under the prior punishment prohibition contained in the Rule. The Government argued that the offenses were not minor and that appellant could therefore be properly tried by court-martial for the same offenses. The military judge agreed with the Government and denied the defense motion. Record at 63. Trial defense counsel made no motion attacking the legal sufficiency of Specifications 2 and 3, but appellant did plead not guilty to those accusations.

### The Military Judge's Ruling on the Motion to Dismiss

As to the imposition of nonjudicial punishment, Article 15(f), UCMJ, provides:

The imposition and enforcement of disciplinary punishment under this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty. 10 U.S.C. § 815(f).

▇▇▇ From the above, Congress clearly did not intend for imposition of nonjudicial punishment to preclude the subsequent court-martial of a servicemember accused of

a serious offense. *United States v. Pierce*, 27 M.J. 367 (C.M.A.1989). In such cases, should an accused be convicted at a subsequent court-martial for the same offense(s), a complete credit for all prior nonjudicial punishment suffered must be afforded. *Id.* On the other hand, when a case does not involve a serious offense, an accused may move to dismiss the charge or charges under R.C.M. 907 (Motions to Dismiss). One provision under this rule states that prosecution is barred when there has been prior punishment under Article 15, UCMJ, if the offense was minor. R.C.M. 907(b)(2)(D)(iv). The difficult task is in the determination of what is a "minor" offense. The Manual for Courts–Martial states the following concerning "minor" offenses:

> Whether an offense is minor depends on several factors: the nature of the offense and the circumstances surrounding its commission; the offender's age, rank, duty assignment, record, and experience; and the maximum sentence imposable for the offense if tried by general court-martial. Ordinarily, a minor offense is an offense for which the maximum sentence imposable would not include a dishonorable discharge or confinement for longer than 1 year if tried by general court-martial. The decision whether an offense is "minor" is a matter of discretion for the commander imposing nonjudicial punishment, but nonjudicial punishment for an offense other than a minor offense (even though thought by the commander to be minor) is not a bar to trial by court-martial for the same offense. *See* R.C.M. 907(b)(2)(D)(iv).

Manual for Courts–Martial, United States, 1984 (M.C.M.), Part V, ¶ 1e.

The maximum punishment for the offense of communication of indecent language to an adult includes confinement for 6 months and a bad-conduct discharge. M.C.M., Part IV, ¶ 89e(2). Appellant was a 31–year–old second class petty officer with 10 years of service. His record and performance had been outstanding. In his essential findings, the military judge noted that appellant used the command's duty telephone and social rosters to make the calls to wives of servicemembers he knew were deployed. Record at 63–64.

He found that the circumstances involved the nature of threats to these wives and concluded that the offenses were not minor within the law of former punishment in bar of trial. *Id.*

Initially, we express our concern regarding what we view as a question of basic fairness. At the nonjudicial punishment hearing, the commanding officer told appellant he could recover from the incident if he performed well. Appellant did so, but probably *too* well as it turned out because his superior performance prompted a recommendation for meritorious promotion. This recommendation, in turn, was the catalyst in a chain of events that ended in his conviction for the same offenses for which he had previously been punished. Ironically, had he performed in a mediocre manner and not been recommended for promotion, it is highly unlikely that anyone would have raised protests or made threats that would have resulted in his court-martial. There is no evidence in the record that anyone in the command or up the chain of command was dissatisfied with the resolution at the nonjudicial punishment hearing. In sum, appellant kept his end of the bargain and suffered as a result.

But, that being said, based on the circumstances of this case, and as a matter of law, we agree with the ruling of the military judge. While it is true that the maximum punishment for each offense was less than that specified in Part V of the M.C.M., that level of punishment is one that is "ordinarily" considered and is only one element of the whole picture. The circumstances surrounding these offenses, particularly considering that appellant knowingly selected women whose husbands were deployed, the abuse of appellant's trust and position as a watchstander and personnelman, and appellant's rank, age and experience convince us that neither the convening authority nor the military judge abused their discretion in finding these offenses not to be minor. We also can discern no bad faith or evil motive in the referral process. *Pierce.* Therefore, we disagree with appellant and find no merit in this assignment of error.

*Indecency of the Language*

■ Appellant next argues that the language contained in specifications 2 and 3 of the Additional Charge was not indecent. Appellant did not challenge the legal sufficiency of these specifications by motion at trial, but he did plead not guilty to these specifications. He argues, as trial defense counsel did below, that the words are neither expressly indecent nor necessarily indecent in context. Record at 215–16; Appellant's Brief at 15. The Government responds first, that specifications not challenged prior to trial are viewed with maximum liberality on review at the appellate level, and second, that the circumstances in which appellant allegedly made the telephone calls justifies an assumption that no innocent interpretation was possible. Government's Reply Brief at 6, 8.

■ "A specification must expressly or by fair implication allege all the elements of an offense. Specifications which are challenged immediately at trial will be viewed in a more critical light than those which are challenged for the first time on appeal." *United States v. French*, 31 M.J. 57, 59 (C.M.A.1990) (citing *United States v. Bryant*, 30 M.J. 72, 73 (C.M.A.1990); *United States v. Brecheen*, 27 M.J. 67, 68 (C.M.A.1988); *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A.1986)). Defective specifications are viewed with maximum liberality when an accused pleads guilty to the offense and only challenges the specification for the first time on appeal. *Bryant*. In such cases, an appellant must show substantial prejudice, demonstrating that the charge was "so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." *Watkins* at 210 (quoting *United States v. Thompson*, 356 F.2d 216, 226 (2d Cir.1965), *cert. denied*, 384 U.S. 964, 86 S.Ct. 1591, 16 L.Ed.2d 675 (1966)). However, when a specification is challenged before trial and an accused ultimately pleads not guilty, reviewing courts have not viewed charges so liberally. *Bryant*.

In this case, appellant did not specifically move to dismiss specifications 2 and 3, but he did plead not guilty to both and argued that the alleged language was not indecent. Record at 214–16. This case falls into that undescribed middle ground because the appellant did not move to dismiss Specifications 2 and 3 and pled not guilty. Whether we view the sufficiency of the specification critically or with maximum liberality, we are not convinced beyond a reasonable doubt that the language was indecent, which is one of the elements of the offense of communicating indecent language. MCM, Part IV, ¶ 89. By pleading not guilty, appellant was challenging the Government to prove that and the other elements beyond a reasonable doubt.

"Indecent" is synonymous with "obscene," and such language is not afforded constitutional protection. *United States v. Moore*, 38 M.J. 490, 492 (C.M.A.1994) (citing *French*). But what is "indecent" or "obscene" has been a source of controversy for many years. *Cf. Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring) ("I know it when I see it."). At issue in cases such as this one, however, is do we know it when we *hear* it, or in our reviews of these cases, when we only *read* it? [2] The Manual for Courts–Martial defines "indecent" language as "that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought." M.C.M., Part IV, ¶ 89c. It also states "The language must violate community standards." *Id.* In *French*, the Court of Military Appeals adopted the following test to determine whether or not language is indecent:

> In assessing whether indecent language is framed adequately in a specification, the courts below have recognized a number of factors, including: "fluctuating community standards ..., the personal relationship existing between a given speaker and his auditor, ... and the probable effect of the communication" as deduced from the four corners of the specification. A test which

---

**2.** All we have before us are the written words appellant allegedly said to women over the telephone. We realize and have made allowances for the fact that reading the words may leave a totally different impression than hearing them, especially if the caller uttered them with certain suggestive intonations and inflections.

has been used is "whether the particular language is calculated to corrupt morals or excite libidinous thoughts." We adopt this test as an appropriate determination for indecent language.

31 M.J. at 60 (citations omitted).

■ But Judge Cox goes on to state that "[f]or the act of communicating indecent language ... there is no additional requirement that it be done with the intent to gratify the 'sexual desires of the accused.' All that is necessary is that the specification allege that the accused communicated an indecent message." *Id.* Based on this rule, this Court has concluded that the issue is really whether the language itself is indecent, and not what message a speaker thought he was communicating. *United States v. Webb,* 39 M.J. 575 (N.M.C.M.R.1993). This Court has also recently stated that the test in *French* is not confined to language with some sexual connotation, but still includes words that are grossly offensive to decency because of their vulgar or disgusting nature. *United States v. Herron,* 39 M.J. 860, 863 n. 3 (N.M.C.M.R. 1994).

Indecency can be conveyed by express declaration of the words themselves, or by implication or innuendo when reasonably construed by community standards. *French* (request to "climb into bed" with a 15–year–old stepdaughter was indecent); *Webb* (comments made to women about breastfeeding found indecent); *United States v. Hullett,* 36 M.J. 938 (A.C.M.R.1993) (offer to make a woman's eyes roll back in her head and her toes curl was indecent); *United States v. Dudding,* 34 M.J. 975 (A.C.M.R.1992) (calling a 7– or 8–year–old girl a "bitch" and a "cunt" was indecent in the military community); *United States v. Linyear,* 3 M.J. 1027 (N.C.M.R.1977), *petition denied,* 5 M.J. 269 (C.M.A.1978) (calling a female Marine a "swine" was not indecent); *United States v. Wainwright,* 42 C.M.R. 997, 1970 WL 7286 (A.F.C.M.R.), *affirmed on other grounds,* 20 C.M.A. 183, 43 C.M.R. 23, 1970 WL 7418 (1970) (request to "Meet me at the Downtowner Motel" was not indecent, but comment that "I'll give you $50.00 for a date" was indecent).

We have concluded that the language contained in Specification 2 is not indecent. The words "I know where you live" and "I want to be with you" received over the telephone from an anonymous caller, while frightful and possibly threatening, are not expressly obscene and do not corrupt morals or excite libidinous thought. They are not *grossly* offensive to modesty, decency or propriety, and do not shock the moral sense because of their vulgar, filthy or disgusting nature. Furthermore, the words "I want to be with you" are clearly more innocuous than the language "Meet me at the Downtowner Motel" that the Court in *Wainwright* found did *not* constitute indecent language.

We also find the language in Specification 3 not to be indecent. These words are also not expressly obscene, and were spoken as a juvenile prank, particularly considering that the surname of the woman called was Foote. While not dispositive, we have considered her testimony that she did not consider the "feet" comments obscene and thought the whole thing was a joke. Record at 129–30, 134. She, as the alleged victim, was a member of the community and her opinion is indicative of community standards. We are not able to find beyond a reasonable doubt under these circumstances that the language was "calculated to corrupt morals or excite libidinous thought." Considering all the circumstances, we conclude, as did Mrs. Foote, that the comments were stupid and juvenile but were not obscene. We also do not find them *grossly* offensive, vulgar, filthy or disgusting.

In light of the above, we are not convinced beyond a reasonable doubt of appellant's guilt of the contested specifications because in our view the evidence was insufficient to prove beyond a reasonable doubt that the language was indecent. We therefore set aside the guilty findings as to specifications 2 and 3 of the Additional Charge and order those specifications dismissed.

### Sentence Appropriateness

■ Until these offenses, appellant had an impeccable record spanning 10 years. During the course of the investigation, he was forthright, cooperative and remorseful. His commanding officer and immediate supervi-

sors described him as an excellent sailor with rehabilitative potential. He attended all the counselling sessions and other meetings with Navy Relief, a psychiatrist, a chaplain, and a physician to put him back on the right track.

We do not mean to diminish the seriousness of appellant's misconduct in this case. His acts of communicating indecent language to women he knew were alone was reprehensible and clearly called for serious punishment. But upon reassessment, and in weighing all of the circumstances of this case, we find that an unsuspended bad-conduct discharge and confinement for 90 days to be inappropriately severe.

### Disposition

Accordingly, the findings as to specifications 1 and 4 of the Additional Charge are affirmed. Upon reassessment, and applying the principles of *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990) and *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), we affirm only so much of the sentence as includes confinement for 60 days, restriction for 30 days, and hard labor without confinement for 30 days.

Senior Judges REED and ORR concur.