Nott, J.,
delivered the opinion of the court:
The general principle laid down by the Supreme Court in Runkle’s Case (122 U. S. R., 543) is that “ in time of peace no sentence of a court-martial directing the dismissal of an officer *558 shall be carried into execution until it shall have been confirmed by the President” (Article of War, 65; 2 Stat. L., 359), and the confirmation being " judicial in its character ” it must appear “ otherwise than argumentatively” that “ the whole proceedings of the court-martial had been laid before him,” and that the confirmation of the sentence was “ the result of his oton judgment,” and not a mere departmental order issued by the Secretary of War.
The trouble in this class of cases has not been with the principle, but with the application of it..
The order of dismissal involved in Runkle's Case (122 U. S. R., 543) is in these words:
“ The findings and sentence are approved.
“ In view of the unanimous recommendation by the members of the court that accused shall receive executive clemency on account of his gallant services during the war and of his former good character, and in consideration of evidence by affidavits presented to the War Department since his trial, showing that accused is now and was at the time when his offense was committed suffering under great infirmity in consequence of wounds received in battle, and creditable representations having been made that he would be utterly unable to pay the fine imposed, the President is pleased to remit all of the sentence except so much thereof as directs cashiering, which -will be duly executed.
“ War. W. Belknap,

“Secretary of War.”

The order of dismissal involved in Page's Case (137 U. S. R., 673) is in these words:
“ War Department,
" Washington City, May 27,1874.
“ In conformity with the sixty-fifth of the Bules and Articles of War the proceedings of the general court-martial in the foregoing case have been forwarded to the Secretary of War and by him submitted to the President.
“The sentence is approved.
“Second Lieut. Frank A. Page (retired) accordingly ceases to be an officer of the Army from the date of this order.
“Wm. W. Belknap,

“Sco'y of War.”

The order of dismissal involved in the present case is in these words:
“War Department, July 24,1872.
“ In conformity with the sixty-fifth of the Buies and Articles of War the proceedings of the general court-martial in the foregoing case have been forwarded to the Secretary of War for the action of the President.
*559 “ The proceedings, findings, and sentence are approved, and the sentence will be duly executed.
“ War. W. Belknap,
“Secretary of War.”
It will be noted that the recitals in the last two orders are identical until we come to their concluding words. In the former those words are “and by him submitted to the President in the latter they are “ for the action of the President.”
In the case of Bunkle the Supreme Court held that the order of dismissal did not show “otherwise than argumentatively” that the proceedings of the court-martial had been laid before the President, or that the confirmation of the sentence was “the result of his own judgment,” and hence it was inoperative and void.
In the case of Page the Supreme Court held that as the order did show upon its face in positive terms that the proceedings had been laid before the President, it might be inferred otherwise than argumentatively that the confirmation of the sentence was the result of his own judgment, and hence that it carried the sentence into execution and dismissed the officer from the Army.
In the present case the question is whether the order comes within the decision in Runkle or in Page.
In neither of those cases does it appear that the order of dismissal was the act of the President, much less “ the result of his own judgment.” The only distinction which can be drawn between the two is that in Page’s case it appears in positive terms that the proceedings of the court liad been forwarded to the Secretary of War and “ by him submitted to the Presi-dentwhile in Runkle’s it only appears on the face of the order that “ in view of the unanimous recommendation by the members of the court that accused shall receive executive clemency,” and of certain other representations not a part of the proceedings of the court-martial, “ the President is pleased to remit all of the sentence except so much thereof as directs cashiering, which will be executed.” Consequently the only rule which can be deduced from the two decisions is that where it appears positively on the face of the order of dismissal that the proceedings of the court-martial had been submitted to the President by the Secretary of War it must be inferred that the subsequent approval and confirmation of the sentence, though *560 in the name of the Secretary, was the act of the President and the result of his own judgment.
A third element appears in the present case which was not in either of the others. It is stated in the order of dismissal that the proceedings of the court-martial had been forwarded to the Secretary of War “/or the action of the President.” In the case of Page it was held that if it appears from the terms of the order that the proceedings of the court had been submitted to the President by the Secretary of War it may be inferred, not argumentatively, that the subsequent order of the Secretary dismissing the officer was the act of the President and the result of his own judgment. Can it likewise be inferred, not argumentatively, that if it appears upon the face of the order that the proceedings were forwarded to the Secretary “ for the action of the President ” the order in the name of the Secretary was the act of the President and the result of his own judgment?
The court can not regard the two orders as identical in legal effect. The former shows without argument or inference that the proceedings of the court-martial were actually laid before the President5 the latter shows nothing more than that the proceedings were “forwarded to the Secretary of War” for a purpose that may never have been executed — his submittingthem to the President. In the one case the record reached its official destination; in the other it may or may not. So far, therefore, the court must regard the case as ruled by the decision in Bunkle, and the order of the Secretary of War as void.
But in 1888 a subsequent Secretary of War called the attention of the then President to a petition of the claimant asking that the sentence of the court-martial be set aside and that he be restored to the retired list, and to an opinion by the Acting Judge Advocate-General stating that there was no evidence that the proceedings were ever laid before the President or that the sentence had received his approval. The Secretary of War added:
“It appears from these facts that Captain Fletcher is still undoubtedly au officer of the Army, and that the proceedings of the court which tried him are now awaiting action by the President. The original record, therefore, is herewith transmitted with a recommendation that the sentence be approved.”
*561 And thereupon the President, on the oth of July, 1888, made an order in his own name approving the proceedings, findings, and sentence.
It is now maintained by the counsel for the claimant that the charges and specifications whereof Captain Fletcher was found guilty show upon their face no offense punishable by dismissal from the Army, and that such a sentence in such a ease is wholly void. The present suit is to recover pay up to the present time and virtually to restore Captain Fletcher to the retired list.
But it is contended by the counsel for the Government that the confirmation of the sentence by the President in 1888 related back and took effect as of the time when the proceedings reached the Secretary of War in 1883; that the President having filled the place of Captain Fletcher on the retired list by an appointment of an officer from the active list, and having filled the place of that officer on the active list by an appointment with the advice and consent of the Senate, there was a removal from office, and that the specifications set up facts which constitute the military offense of conduct unbecoming an officer and a gentleman, the punishment of which is dismissal from the Army (Art. War, 61).
There are two statutes relating to the dismissal of officers, which nevertheless have different objective points. The first is that which has been quoted, the sixty-fifth Article of War (now 106, Rev. Stat., § 1342); the second is the Act 17th July, 1866 (14 Stat. L., 92, § 5, Rev. Stat., § 1229), which provides that no officer in time of peace shall be dismissed from the service “ except upon and in pursuance of the sentence of a court-martial to that effect or in commutation thereof.”
The former statute is to be found in the “ Rules and Articles ” for the government of “The armies of the United States” (Rev. Stat., § 1342), and operates upon commanding generals in the field, generals commanding military departments, and the Secretary of War, in effect taking away the authority which they once possessed and forbidding them to carry the sentence of a court-martial into execution ,• the latter is founded on that provision of the Constitution which invests Congress with power “ to make rules for the government and regulation of the land and naval forces,” and is a restriction upon the power of the Commander-in-Ohief.
*562 To these may be added a third law as declared by the Supreme Court in Blake’s Case (103 U. S. R., 227), the authority of the President, with the advice and consent of the Senate, to remove a military or naval officer notwithstanding the restriction of the last quoted statute, by the appointment of his successor.
The President did not assume to dismiss Captain Fletcher on his own judgment and responsibility; and the action of the President and the Senate in filling a vacancy on the active list seems to the court too remote to be accepted as the intentional dropping of an officer from the retired list. It was not the taking of a specific office from one man and giving it to another. All that the President has done or assumed to do was to give effect to the proceedings of the court martial by the confirmation of the sentence. If there was no valid sentence of a court of competent jurisdiction there was nothing to be confirmed. We must therefore determine whether the acts set up in the specifications, of which Captain Fletcher was found guilty, constitute an offense which will sustain the charge and consequently the sentence.
It must be confessed that, in the affairs of civil life and under the rules and principles of municipal law, what we ordinarily know as fraud relates to the obtaining of a man’s money, and not to refusing to pay it back. It is hard for the trained lawyer to conceive of an indictment or declaration which should allege that the defendant defrauded A or B by refusing to return to him the money which he had borrowed from him. Our legal training, the legal habit of mind, as it is termed, inclines us to dissociate punishment from acts which the law does not define as offenses. As one of our greatest writers of fiction puts it, with metaphysical fitness and accurate sarcasm, as she describes one of her legal characters, “ His moral horizon was limited by the civil code of Tennessee.” That it is a fraud to obtain a man’s money by dishonest representations, but not a fraud to keep it afterwards by any amount of lying and deceit, is a distinction of statutory tracing. The gambler who throws away other people’s money and the spendthrift who uses it in luxurious living instead of paying it back, cheat and defraud their creditors as effectually as the knaves and sharpers who drift within the meshes of the criminal law. We learnt as law students iu Blackstone that there are things *563 which ar& malum in se and, in addition to them, things which are merely malum prohibitum ; but unhappily in the affairs of real life we find that there are many things which are malum in se without likewise being malum prohibitum. In military life there is a higher code termed honor, which holds its society to stricter accountability; and it is not desirable that the standard of the Army shall come down to the requirements of a criminal code. Moreover,' the specifications aver in one instance that the claimant used his honorable military position to borrow money upon, and assured his creditors of payment from the pay which the Government allows to officei’S on the retired list. It may or it may not be dishonorable for a man not to pay his debts; but that may depend upon how he incurred them and whether it is within his human possibilities to pay them. Certainly the Government does not give officers the respectability of rank and the support of retired pay to enable them to prey upon their fellow citizens. Eemembering the honorable military record of the claimant, the court is averse to commenting upon the details of the specifications, especially as it is not at liberty to review the evidence, but at the same time can not hold that refusing to pay a debt may not be conduct unbecoming an officer and a gentleman.
The court is therefore of the opinion that when the President approved the sentence, Captain Fletcher ceased to be an officer in the Army. But the court is at the same time of the opinion that the sentence did not become operative until then; and that from December 1, 1883, when the claimant was last paid, to July 5, 1888, when the sentence was confirmed by the President, Captain Fletcher is entitled to recover the pay of his rank on the retired list.
The case of Ide (25 C. Cls., 401) has been pressed upon the attention of the court by the counsel for the Government. The distinction between the two cases is this: In the former the claimant, being upon the active list, owed service to the Government which he allowed another man to perform, and his acquiescence in the action of the Secretary of War for a long period of time was an abandonment of the office, equivalent to a resignation. In the present case the claimant was exempt from service, and his pay on the retired list an honorable form of pension. That the retired list had reached its full limit by the retirement of another officer who took the'claimant’s place *564 (lid not change his relation to the Government and was a condition of affairs with which he was not chargeable.
The judgment of the court is that the claimant recover of the defendant the sum of $9,654.