UNITED STATES, Appellee,

v.

Lester R. MOORE, Colonel U.S. Air Force, Appellant.

No. 68,414.

CMR No. 28290.

U.S. Court of Military Appeals.

Argued Oct. 7, 1993.

Decided Jan. 12, 1994.

For Appellant: *Captain Gilbert J. Andia, Jr.* (argued); *Colonel Terry J. Woodhouse* (on brief); *Lieutenant Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock.*

For Appellee: *Captain Jane M.E. Peterson* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant, a colonel in the United States Air Force, was tried by general court-martial with members. Contrary to his pleas, he was convicted of four specifications of sodomy; seven specifications of extortion; six specifications of conduct unbecoming an officer by communicating indecent language and committing an indecent act; and four specifications of conduct prejudicial to good order and discipline by committing indecent acts, in violation of Articles 125, 127, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 925, 927, 933, and 934, respectively. He was sentenced to be dismissed from the service.

The original convening authority approved the sentence. The Court of Military Review set aside the convening authority's action and returned the record to the Judge Advocate General of the Air Force for a new action. Unpub. op. (April 18, 1991), 1991 WL 85323. A new convening authority also approved the sentence. The Court of Military Review affirmed in an unpublished opinion dated June 15, 1992.

The charges arose from a relationship between appellant and a woman, MJV, whom he had met in his hometown before he joined the Air Force—he then was 20 years old and she 14. The two had a sexual relationship, including oral sex, anal sex, and other forms of sexual experimentation, that was maintained through brief periodic rendezvous and lasted approximately 28 years.

During early 1989, MJV decided to terminate her sordid relationship with appellant. The Air Force Office of Special Investigations (OSI) became involved as a result of her allegations that appellant was threatening to divulge her sexual indiscretions and reveal nude photographs of her to her parents if she failed to continue the affair and pay appellant varying sums of money. By this time, appellant was a colonel in the Air Force. With MJV's consent, OSI agents videotaped an arranged meeting with appellant in a rest room shower at the Kansas City International Airport. There, MJV told appellant of her desire to discontinue their relationship. He repeatedly ordered her to satisfy his sexual desires, but MJV refused. He threatened to show MJV's parents two letters she had written to him and pictures he had taken of her in the nude. MJV paid appellant $200, but he continued threatening to go to her parents if she did not perform specific sex acts. Finally, their meeting was brought to an end when airport maintenance personnel knocked on the shower stall door.

In addition to taping the airport meeting, OSI agents taped telephone conversations from appellant's duty station between appellant and MJV in May and June of 1989. During the conversations, appellant gave graphic, lascivious descriptions of past and anticipated sexual acts with MJV, including oral and anal sodomy. He also continued to threaten her in order to receive promises of sex and money. Appellant's statements in the video-and audio-taped conversations are the subject of the charges of conduct unbecoming an officer and gentleman.[1]

---

1. The relevant specifications under Charge III are as follows:

Specification 1: In that [appellant] ... in a men's room at the Kansas City International Airport, on or about 9 May 1989: ... did orally communicate to ... [MJV] indecent language, to wit: "I want to come; are you prepared to make that happen? Nothing's going to happen until you get down on your knees and start sucking my penis," or words to that effect ... which under the circumstances was conduct unbecoming an officer and gentleman.

Specification 2: In that [appellant] ... did ... on or about 10 May 1989, by telephone from his duty station communicate to ... [MJV] certain indecent language, to wit: "All I really wanted to do was, you know, lick your c_; but the favorite [picture] I have is of you with a carrot up your ass and a banana up your p_; you've gotten pretty comfortable with taking it in the butt," or words to that effect, which under the circumstances was conduct unbecoming an officer and gentleman.

Specification 3: In that [appellant] ... did ... on or about 11 May 1989, by telephone from his

This Court granted review of the following issue:

WHETHER INDECENT LANGUAGE COMMUNICATED BETWEEN CONSENTING ADULTS IS CONSTITUTIONALLY PROTECTED BY THE RIGHT OF PRIVACY.

■■■ Appellant argues that the conversations in issue fall within that penumbra of privacy impliedly guaranteed by the Bill of Rights and recognized by the Supreme Court of the United States. This right to privacy "encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446 (1973). *See United States v. Henderson*, 34 MJ 174, 176–77 (CMA 1992). However, we are aware of no constitutional right which insulates appellant's conversations with MJV; no "zone" of "privacy" (*see* 413 U.S. at 66, 93 S.Ct. at 2639) prevents a participant in a conversation from revealing what was said. *See also Hoffa v. United States*, 385 U.S. 293, 302–03, 87 S.Ct. 408, 413–14, 17 L.Ed.2d 374 (1966) (A speaker bears the risk the person in whom he confides will betray his confidence.). MJV was free to allow others to hear and record her conversations with appellant regardless of his lack of knowledge or consent. The Constitutional right to privacy envisioned by appellant, which per-

manently immunizes him from accountability for his interactions with and statements to others or requires people he victimizes to protect the confidentiality of his statements and actions, simply does not exist.[2]

■■■ Next, appellant submits that his remarks to MJV are protected by his First Amendment right to free speech. The court-martial found appellant guilty of communicating indecent language. The Court of Military Review found that "[t]he charged language in this case was not simply amorous banter between two long-time lovers; rather, it was demeaning vulgarity interwoven with threats and demands for money and sex—all designed to force MJV to continue an adulterous relationship with appellant despite her clearly expressed desires to the contrary." Unpub. op. at 3–4. We agree with the findings of the court-martial and of the Court of Military Review.

■■■ Obscenity is not within the right to speech guaranteed by the First Amendment. 413 U.S. at 69, 93 S.Ct. at 2641; *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957). "Indecent" is synonymous with "obscene," and such language is not afforded constitutional protection. *United States v. French*, 31 MJ 57, 59 (CMA 1990). One of the factors in determining whether language is indecent is "the personal relation-

duty station communicate to … [MJV] certain indecent language, to wit: "I'm gonna butt f‗ you, when I come into the room, I want you completely naked, okay? and then after that, we'll do it one more time, just a regular screw," or words to that effect, which under the circumstances was conduct unbecoming an officer and gentleman.

Specification 4: In that [appellant] … did … on or about 12 May 1989, by telephone from his duty station communicate to … [MJV] certain indecent language, to wit: "You're gonna provide me your asshole; that may mean tasting a little come and everything else," or words to that effect, which under the circumstances was conduct unbecoming an officer and gentleman.

The relevant specification under Additional Charge II is as follows:

Specification: In that [appellant] … did … on or about 8 June 1989, by telephone from his duty station, communicate to … [MJV]

certain indecent language, to wit: "And do you remember the banana and the carrot? That's my favorite; and then there's the one, you know, that you're on all fours and you're looking back between your legs? So it shows your asshole and your c‗. Those two [pictures] are my favorites," or words to that effect, which under the circumstances was conduct unbecoming an officer and gentleman.

2. Appellant apparently combines his assertion that his conversations were protected by his Constitutional right to privacy with a Fourth Amendment expectation-of-privacy argument. That the communications were protected by the Fourth Amendment right to be free from unwarranted governmental intrusion should have been raised to challenge admissibility of the audio and video tapes rather than in the context of the granted issue before this Court.

ship existing between a given speaker and his auditor." *Id.* at 60. In this case the vulgar language was part and parcel of an abusive, degrading, extortionate, adulterous relationship, and as such it was indecent.

Appellant's indecent language is the basis for his conviction of conduct unbecoming an officer and gentleman under Article 133 of the Uniform Code. The elements of that offense are:

(1) That the accused did or omitted to do certain acts; and

(2) That, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and gentleman.

Para. 59b, Part IV, Manual for Courts-Martial, United States, 1984.

■ The need for obedience and discipline within the military necessitates an application of the First Amendment different from that in civilian society. *Parker v. Levy*, 417 U.S. 733, 759, 94 S.Ct. 2547, 2563, 41 L.Ed.2d 439 (1974) (*quoting United States v. Priest*, 21 USCMA 564, 570, 45 CMR 338, 344 (1972)). Because of the command structure and the necessity for good order and discipline in the military, every officer is proscribed from acting in a way "to bring dishonor or disrepute upon the military profession which he represents." 417 U.S. at 754, 94 S.Ct. at 2560 (citations omitted).

■ It has long been recognized that a "higher code termed honor" holds military officers "to stricter accountability." 417 U.S. at 765, 94 S.Ct. at 2566; *United States v. Wales*, 31 MJ 301, 311 (CMA 1990) (Cox, J., dissenting in part and concurring in the result); *United States v. Guaglione*, 27 MJ 268, 271 (CMA 1988); *United States v. Tedder*, 24 MJ 176, 182 (CMA 1987); *Fletcher v. United States*, 26 Ct.Cl. 541, 563 (1891), *rev'd.*, 148 U.S. 84, 13 S.Ct. 552, 37 L.Ed. 378 (1893). The conduct of an officer may be unbecoming even when it is in private, as appellant argues his conduct was. 27 MJ at 272. Appellant's actions are clearly " 'unbecoming' an honorable, decent, and moral man." 31 MJ at 311; *see* 417 U.S. at 765, 94 S.Ct. at 2566. And any "reasonable military officer" would recognize that fact. *United States v. Frazier*, 34 MJ 194, 198–99 (CMA 1992). His statements were of the kind that would bring discredit upon himself and raise serious questions regarding his leadership ability. This Court cannot possibly consider appellant's behavior acceptable for an officer in the United States military whose position commands trust and respect. *See United States v. Court*, 24 MJ 11, 17 n. 2 (CMA 1987) (Cox, J., concurring in part and dissenting in part); *United States v. Scott*, 21 MJ 345, 350–52 (CMA 1986) (Cox, J., concurring).

The decision of the United States Air Force Court of Military Review on further review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.