# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM S32478 (f rev)**

---

**UNITED STATES**
*Appellee*

**v.**

**Anthony T. MORGAN**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 21 August 2019

---

*Military Judge:* Mark F. Rosenow (arraignment), Vance H. Spath.

*Approved sentence:* Bad-conduct discharge, confinement for 7 months, forfeiture of $1,066.00 pay per month for 9 months, and reduction to E-1. Sentence adjudged 28 June 2017 by SpCM convened at Luke Air Force Base, Arizona.

*For Appellant:* Major Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Michael T. Bunnell, USAF; Mary Ellen Payne, Esquire.

Before MINK, POSCH, and KEY, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

POSCH, Judge:

In accordance with Appellant's pleas pursuant to a pretrial agreement (PTA), a general court-martial composed of a military judge found Appellant guilty of patronizing a prostitute and communicating indecent language, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for seven months, forfeiture of $1,066.00 pay per month for nine months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence, which did not exceed the limitations in the PTA.

Appellant's case was originally docketed with this court on 25 August 2017. In Appellant's initial appeal, this court *sua sponte* assessed the failure of the staff judge advocate to correct an erroneous statement in the defense clemency submission in light of *United States v. Addison*, 75 M.J. 405 (C.A.A.F. 2016) (mem.), and *United States v. Zegarrundo*, 77 M.J. 612, 614 (A.F. Ct. Crim. App. 2018). Finding prejudice, on 28 January 2019, we set aside the action of the convening authority and returned the record of trial to The Judge Advocate General for remand to the convening authority for new post-trial processing and conflict-free defense counsel. *See United States v. Morgan*, No. ACM S32478, 2019 CCA LEXIS 32 (A.F. Ct. Crim. App. 28 Jan. 2019) (unpub. op.). On 29 March 2019, the convening authority took action, again approving the adjudged sentence. On 3 April 2019, the case was again docketed with this court.

Appellant raised two assignments of error in his initial appeal. First, Appellant averred that the military judge abused his discretion by accepting Appellant's plea of guilty to communicating indecent language because the facts do not establish that Appellant's language was indecent as a matter of law.[2] Second, Appellant averred that this court has jurisdiction under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to order a remedy for pay he has been improperly denied. Upon docketing anew, Appellant, citing *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), claimed prejudice due to the amount of time his case has been on appeal and made a demand for speedy appellate review. Finding no prejudicial error and no jurisdiction over Appellant's pay dispute, we affirm.

---

[1] All references to the Uniform Code of Military Justice are found in the *Manual for Courts-Martial*, *United States* (2016 ed.).

[2] Appellant personally asserts this issue. *See United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

In approximately January 2015, Appellant paid CA, an 18-year-old female, for sexual intercourse. Appellant discussed with CA the subject of finding 13- and 14-year-old girls to engage in sexual acts with Appellant. Later, Appellant sent CA text messages asking if she had a sister or knew of anyone "younger." Appellant said he was willing to pay $800.00 for sexual intercourse with a 14-year-old girl and requested a photo of the girl before he would enter into any agreement. Appellant's messaging with CA ended without receiving any photos or entering into any agreement.

Also in January 2015, undercover agents of the Apache Junction (Arizona) Police Department (AJPD) placed an advertisement on the Internet where they posed as a 19-year-old female escort. Appellant responded to the ad with a text message asking if the escort knew any "younger" girls and stated he was willing to pay $400.00 for sexual intercourse. The escort offered a 16-year-old, and Appellant stated that he would make it worth her time if she could find someone younger. Appellant relayed he would pay $800.00 dollars for 15 minutes of sexual intercourse if the escort "could find around 12," meaning a 12-year-old girl as Appellant explained to the military judge. The escort replied that her "little sister" was close by, but they needed to meet Appellant first. Appellant wanted to know what was included in the 15 minutes and stated he wanted to "kiss the kitty keep panties and sex." "Kiss the kitty" means to perform oral sex on a female as was stipulated by the parties. Appellant asked the age of the escort's sister and the AJPD agents provided a birthdate that would have made the sister 11 years old. Appellant replied, "perfect," asked to see a picture, and remarked that $500.00 was the most cash he could get in a day.

Later in the evening, Appellant called the escort on the phone and said he would drive fast to meet her and her sister before their mother returned home. At the conclusion of the phone call, Appellant asked for a picture of the sister's body as a reward for his phone call and if the escort would accept $500.00. Appellant never arrived for the rendezvous and did not attempt to contact the escort again. Ultimately, Appellant never met with the undercover agent and all communications ceased. An AJPD agent who was involved in the operation testified that, before the pre-meeting phone call occurred, the undercover agents knew Appellant was an Airman in the United States Air Force.

In August 2015, agents of the Federal Bureau of Investigation (FBI) posed as CA with a new cellphone number and initiated contact with Appellant via a text message to Appellant's cell phone. Appellant texted back, asking if CA wanted to meet again and if she had any friends who could join in, preferably "someone younger if you can." Appellant asked, "what's the youngest you can get?" and wanted to know how much sex with a 13-year-old girl would cost. Appellant negotiated a payment of $300.00 for a "69," and later, Appellant

texted CA, "so can I finger and 69." Both parties stipulated that Appellant intended this to mean to penetrate the girl's vagina with his fingers as well as perform oral sex on the girl at the same time the girl performed oral sex on him. Appellant made several requests for a picture of the girl and asked if the girl had "ever been with" someone before. CA informed Appellant she would not send a picture of the girl's face because of the girl's age. Appellant responded, "the more showing the better" and the "less she is wearing the better I prefer nothing if you can."

The FBI agents learned that Appellant was an active duty Airman stationed at Luke Air Force Base, Arizona. The agents attempted to interest Appellant in meeting with an undercover agent posing as a child prostitute. Just as Appellant failed to show for his encounter with the escort arranged by AJPD, Appellant also failed to appear at the meeting scheduled by the FBI agents.

At trial, Appellant stipulated that the AJPD and FBI agents found Appellant's communications with them to be "indecent and grossly offensive to the community sense of decency and propriety."

## II. DISCUSSION

### A. Providence of Guilty Plea

Appellant asserts the military judge abused his discretion when he accepted Appellant's guilty plea to communicating indecent language on divers occasions. Appellant asks us to find that his "private, consensual communications" with CA and with two undercover law enforcement officers were not indecent as a matter of law, notwithstanding Appellant's sexually explicit conversations about proposing and paying for sexual acts with children. Appellant claims he should not have been found guilty because he never intended and did not take any step towards a sexual act with a child and because his communications were speech protected by the First Amendment to the United States Constitution.[3] We disagree with Appellant's claims and find the plea provident.

#### 1. Law

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) (*citing United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)). During a guilty plea inquiry, the military judge is charged with determining whether there is an adequate basis in law and fact to support the plea. *United States v. Inabinette*, 66 M.J. 320, 321–22 (C.A.A.F. 2008) (citation omitted). We will not set aside a

---

[3] U.S. CONST. amend. I.

guilty plea unless there is a "substantial basis" in law and fact for questioning the plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991).

Uttering indecent language is punishable under Article 134, UCMJ. As charged in this case, the offense has three elements: (1) that, on divers occasions, Appellant, orally and in writing, communicated to CA and, in writing, communicated to members of the AJPD and FBI certain language, to wit: statements regarding arranging sexual acts with minors; (2) that the language was indecent; and (3) that, under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 89.b.

Indecent language is defined as "that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought." *Id.* at ¶ 89.c. It must also be calculated to corrupt morals or excite libidinous thoughts. *United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F. 1998) (quoting *United States v. French*, 31 M.J. 57, 60 (C.M.A. 1990)). The language must be evaluated in the circumstances under which the charged language was communicated. *See French*, 31 M.J. at 59.

The term "indecent" can be "synonymous with . . . 'obscene.'" *United States v. Moore*, 38 M.J. 490, 492; *see also French*, 31 M.J. at 59. "Obscenity is not within the right to speech guaranteed by the First Amendment." *Moore*, 38 M.J. at 492 (C.M.A. 1994) (citing *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 69 (1973); *Roth v. United States*, 354 U.S. 476, 485 (1957)). To be indecent, the language must violate community standards. *MCM*, pt. IV, ¶ 89.c. When determining whether certain language violates community standards, it is appropriate to consider the larger Air Force worldwide community. *United States v. Baker*, 57 M.J. 330, 339 (C.A.A.F. 2002) (citation omitted).

**2. Analysis**

The military judge did not abuse his discretion in accepting Appellant's plea of guilty to communicating indecent language. For the military judge to find an adequate basis in law and fact to accept Appellant's plea, it mattered not whether Appellant intended or took any step towards a sexual act with a child: neither is an element of the offense of communicating indecent language. What mattered was whether Appellant's communications were protected by the Constitution. If they were, then they could not be indecent as a matter of law.

During the guilty plea inquiry, the military judge specifically referenced the First Amendment and noted that, if Appellant's conversation had been about adults and not children, then "this is probably not indecent." Drawing

that distinction, the military judge asked Appellant if the fact that his communications referenced ages of children, not adults, made a difference. Appellant answered in the affirmative that it was their ages that made his language indecent.

Without deciding the validity of the premise of the military judge's question—that Appellant's language would not have been indecent but for the age of the child—we nonetheless agree that, in accepting Appellant's guilty plea, the military judge properly applied the legal standard for determining whether Appellant's communications constituted "indecent language." Appellant's verbal and written communications described offering money for sexual acts with minors. At trial Appellant admitted his language was "grossly offensive to any community sense of modesty or decency" and was "indecent because [Appellant] was talking about [performing] sexual acts with a 13-year-old." We agree.

Turning to the reason Appellant claims his speech was protected under the Constitution, we find Appellant is not entitled to First Amendment protection simply because his communications were with purported like-minded adults and he believed the communications were private conversations. A factor in determining whether language is indecent and thus not protected by the First Amendment is "the personal relationship existing between a given speaker and his auditor." *Moore*, 38 M.J. at 492–93 (C.M.A. 1994) (quoting *French*, 31 M.J. at 60) (finding indecent language communicated between consenting adults was not constitutionally protected when it "was part and parcel of an abusive, degrading, extortionate, adulterous relationship"). Appellant had no relationship with CA other than paying her once for sexual intercourse. Other than this single encounter with Appellant, she was a stranger not unlike the undercover agents with whom Appellant communicated. We find Appellant's language was objectively obscene, fell outside the protections of the First Amendment, and is punishable as indecent language under the UCMJ.

In *United States v. Garrigan*, the appellant similarly communicated to an undercover law enforcement investigator (whom the appellant believed was another adult male) about sexual acts the appellant wanted to perform on two girls. No. ACM 37920, 2013 CCA LEXIS 118, at *3 (A.F. Ct. Crim. App. 15 Feb. 2013) (unpub. op.). Finding the appellant's guilty plea to communicating indecent language provident, this court was not persuaded in *Garrigan* that a conversation between two adults about performing sexual acts on minors was constitutionally protected speech. Our conclusion does not change in the case now before us where Appellant communicated with adults about paying for sexual acts with 12- and 13-year-old children. *See United States v. Williams*, 553 U.S. 285, 297 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection.") (citations omitted).

We find Appellant's communications about paid sexual acts with children was not speech protected by the First Amendment, but was indecent language. Consequently, we find no substantial basis in law and fact for questioning the providence of the plea. *Inabinette*, 66 M.J. at 322 (citation omitted). We conclude that the military judge did not abuse his discretion by accepting Appellant's guilty plea and finding Appellant guilty of communicating indecent language on divers occasions.

## B. Jurisdiction of Pay Dispute

In the same action approving Appellant's adjudged sentence, the convening authority ordered that "[u]nless competent authority otherwise directs, [Appellant] will be required, under Article 76a, UCMJ, [10 U.S.C. § 876a,] to take leave pending completion of appellate review."[4] At the time Appellant began the required period of what is referred to as "appellate leave," he had 36 days of accrued leave. When presented with an option to receive a lump sum payment for the accrued leave or to "use" the leave, Appellant elected the latter, that is to "[r]eceive pay and allowances during the period of accrued leave and then continue on unpaid required excess leave." As of the date Appellant filed his assignments of error, he had not been paid for the period during which he "used" his accrued leave despite his multiple trips to the servicing finance office. Likewise, Appellant avers he has not been paid for the accrued leave both in his 27 March 2019 request for clemency after we ordered post-trial processing anew, and in an 11 April 2019 declaration to this court.

Appellant asserts he has been improperly denied his pay and this court has jurisdiction under Article 66(c), UCMJ, to order a remedy. Appellant requests we grant meaningful sentencing relief, which at a minimum should include disapproval of Appellant's reduction in grade to "financially compensate Appellant for the government's unwarranted and punitive withholding of pay following his trial." Appellant asks us to reconsider our decision in *United States v. Buford*, 77 M.J. 562 (A.F. Ct. Crim. App. 2017), *rev. denied*, 77 M.J. 267 (C.A.A.F. 2018), where we held that Article 66(c), UCMJ, does not confer jurisdiction for us to resolve a pay issue absent a nexus to the court-martial sentence or some evidence of intent to impose illegal post-trial punishment.

At the same time Appellant asks us to reconsider *Buford*, Appellant asks us to distinguish *Buford* on the narrow ground that, because Appellant's appellate leave was a direct consequence of his punitive discharge, it follows that failure to pay him for his "used" accrued leave amounted to an unlawful punishment over which we have jurisdiction to take corrective action.

---

[4] The same language appears in both the initial action signed on 17 August 2017, and the action signed on 29 March 2019 after we ordered new post-trial processing.

We decline to reconsider our decision in *Buford* and we are not persuaded by Appellant's argument to distinguish *Buford*. Appellant properly characterizes his adjudged bad-conduct discharge as "punitive," but like the appellant in *Buford*, Appellant has failed to establish a nexus between his pay issue and his sentence or to present evidence that a member of his command or other military official withheld his pay for the period of accrued leave in order to increase the severity of his sentence and impose illegal post-trial punishment. We conclude, as we did in *Buford*, that this court does not have jurisdiction to decide Appellant's pay dispute.

## C. Timeliness of Appellate Review

Appellant asserts that the post-trial delay from the date his case was first docketed with this court on 25 August 2017, until the date of this opinion warrants relief. In a post-trial declaration dated 11 April 2019, Appellant alleges prejudice because he cannot receive medical treatment at the Department of Veterans Affairs (VA) for injuries sustained in his first two terms of honorable service or a housing allowance as part of education benefits administered by the VA so long as he remains on active duty. Appellant also declares that he has missed job opportunities from not having a Department of Defense (DoD) Form 214 discharge certificate from his current enlistment.

### 1. Law

We review de novo whether an appellant has been denied the due process right to a speedy post-trial review and appeal. *Moreno*, 63 M.J. at 135 (C.A.A.F. 2006) (citations omitted).

A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this court. *Id.* at 142. The *Moreno* standard continues to apply as a case moves through the appellate process; however, the *Moreno* standard is not violated when each period of time used for the resolution of legal issues is within the 18-month standard. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013); *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). However, when a stage of appellate review is not completed within 18 months, it triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno. See also United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530). While *Barker* addressed speedy trial issues in a pretrial, Sixth Amendment[5] context, its four-factor

---

[5] U.S. CONST. amend. VI.

analysis has been broadly adopted for reviewing post-trial delay due process claims. *Moreno*, 63 M.J. at 135.

### 2. Analysis

We determine no violation of Appellant's right to due process and a speedy post-trial review and appeal. In the case at hand, this court *sua sponte* assessed the failure of the staff judge advocate to correct an erroneous statement in the defense clemency submission. The matter was redocketed with this court on 3 April 2019 after post-trial processing anew. Both our prior opinion of 28 January 2019 and this decision occurred within 18 months of their respective docketing dates, and consequently we find no presumption of facially unreasonable delay. *Moreno*, 63 M.J. at 142; *see also United States v. Phillips*, No. ACM 38771, 2019 CCA LEXIS 102, at *26 (A.F. Ct. Crim. App. 8 Mar. 2019) (unpub. op.).

Without a presumptively unreasonable delay, we need not conduct a *Barker* analysis. *Roach*, 69 M.J. at 22. However, under Article 66, UCMJ, we have authority to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (citation omitted); *see also United States v. Harvey*, 64 M.J. 13, 25 (C.A.A.F. 2006).

The delay in this case did not cause Appellant to serve unwarranted confinement and was not so egregious that it adversely affects the public's perception of the fairness and integrity of the military justice system. As a result, there is no due process violation. *See United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). In addition, we determine that Appellant is not due relief even in the absence of a due process violation. *See Tardif*, 57 M.J. at 223–24. Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we find the delay in appellate review justified and relief for Appellant unwarranted.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Arti-

cles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court