# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39608**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Steven A. MCDANIEL Jr.**
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 July 2020

———————————

*Military Judge:* Mark F. Rosenow.

*Approved sentence:* Bad-conduct discharge and reduction to E-1. Sentence adjudged 31 August 2018 by GCM convened at Kadena Air Base, Japan.

*For Appellant:* Major Mark J. Schwartz, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Chief Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH and Judge KEY joined.

———————————

**PUBLISHED OPINION OF THE COURT**

———————————

J. JOHNSON, Chief Judge:

A general court-martial composed of officer members found Appellant guilty, contrary to his pleas, of one specification of communicating indecent language in violation of Article 134, Uniform Code of Military Justice (UCMJ),

10 U.S.C. § 934.[1,2] The court-martial sentenced Appellant to a bad-conduct discharge and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

On appeal, Appellant personally raises a single issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982): whether the military judge erred by denying the Defense's motion to dismiss Charge II and its Specification for failure to state an offense. We find no error, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant was stationed on Kadena Air Base (AB), Okinawa, Japan, when on 30 December 2017 he responded to an online personal advertisement for the Okinawa geographic region. The advertisement was entitled "Taboo, Incest – w4m," and read, "Hey I'm looking for a buddy to fool around with me and my kids. I'm not looking for anything long term just need this soon. If you're into young hit me up . . . ." Appellant responded, "'Im 20 i want to hear more about this."

So began Appellant's communications with "J," who portrayed herself to be the civilian spouse of a Navy servicemember who was living on Kadena AB with her two children, a 13-year-old daughter and an 11-year-old son. Appellant continued to exchange messages with "J" over the course of approximately four weeks. Appellant asked a number of questions and made comments related to making plans to meet with "J" in order to engage in and observe sexual acts with her children. These messages included, *inter alia*, a suggestion that Appellant could engage in sexual acts with "J's" daughter while "J" engaged in sexual acts with her son, and then they could "switch;" inquiring whether "J" had previously engaged in sexual acts with her son and whether she had seen him masturbate; stating that Appellant would enjoy watching "J" engage in sexual intercourse with her son; and expressing concern that "J's" daughter was old enough to become pregnant and asking whether he could ejaculate in the daughter's mouth.

In reality, "J" was a false persona created by Special Agent (SA) JT, an agent of the Naval Criminal Investigative Service (NCIS) stationed on Okinawa. SA JT posted the online advertisement and conducted the correspondence with Appellant as a member of an NCIS element focusing on crimes

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The court-martial found Appellant not guilty of one specification of attempted sexual assault of a child in violation of Article 80, UCMJ, 10 U.S.C. § 880.

against children. In the course of their correspondence, Appellant identified himself as an Airman and sent "J" a photo of his head and shoulders.

Eventually, after Appellant informed "J" that he had tested negative for sexually transmitted diseases, Appellant and "J" made plans for him to come to her residence on Appellant's day off, 26 January 2018. "J" explained her spouse was on temporary duty away from Okinawa at the time. After some hesitation and delay, on the evening of 26 January 2018 Appellant arrived at the residence "J" identified, where he was arrested in the front yard by a joint-service team of law enforcement agents.

Appellant was tried for one charge and specification of attempted sexual assault of a child (Charge I) and one charge and specification of communicating indecent language (Charge II), in violation of Articles 80 and 134, UCMJ, respectively. The Specification of Charge II alleged that Appellant communicated to "J" in writing "certain indecent language" that was "of a nature to bring discredit upon the armed forces," and recited verbatim from a number of specific messages Appellant had sent "J."

Before trial, the Defense moved to dismiss Charge II and its Specification claiming it "fail[ed] to state an offense that brings this consensual conduct outside the due process liberty interests recognized by the Supreme Court in *Lawrence v. Texas*."[3] The Government opposed the motion, contending that the Fourteenth Amendment[4] due process privacy interests addressed in *Lawrence* do not extend to private conversations, and that obscene speech is not protected by the First Amendment.[5] At a hearing on the motion, the Defense called Dr. MD to testify as an expert in "forensic research psychology." Dr. MD testified regarding her research and knowledge of "sexting," which she described as the "internet-based exchange" of "sexual based material" consisting of "words" or "pictures," "typically over phones or computers." Dr. MD testified that sexting is "sexual behavior" that can "build intimacy" between the participants, and further testified that various studies indicated between 40 percent and 80 percent of young adults reported that they had "sexted."

After receiving arguments from counsel, the military judge issued oral and written rulings denying the motion to dismiss. Citing precedent from the

---

[3] 539 U.S. 558 (2003).

[4] U.S. CONST. amend. XIV.

[5] U.S. CONST. amend. I.

United States Court of Military Appeals and several decisions of this court,[6] the military judge concluded that "it is settled that indecent language privately communicated even between consenting adults is not constitutionally protected."

The court-martial found Appellant not guilty of the attempted sexual assault of "J's" daughter alleged in the Specification of Charge I, but guilty of communicating indecent language as alleged in the Specification of Charge II.

## II. DISCUSSION

### A. Law

"The constitutionality of an act of Congress is a question of law that we review de novo." *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012) (citing *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005)). "Where . . . an appellant argues that a statute is 'unconstitutional as applied, we conduct a fact-specific inquiry.'" *Id.* (citations omitted).

As charged in this case, the elements of the offense of communicating indecent language in violation of Article 134, UCMJ, included that on the dates and at the location alleged, (1) Appellant communicated to "J" certain language in writing; (2) that the language was indecent; and (3) that under the circumstances Appellant's conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 89.b. "'Indecent' language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts." *MCM*, pt. IV, ¶ 89.c. The indecency of a communication depends on "the context in which it is made." *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) (citation omitted).

The United States Court of Appeals for the Armed Forces (CAAF) "has long held that 'indecent' is synonymous with obscene." *United States v. Meakin*, 78 M.J. 396, 401 (C.A.A.F. 2019) (citing *United States v. Moore*, 38 M.J. 490, 492 (C.M.A. 1994)). "It is well-settled law that obscenity is not speech protected by

---

[6] *United States v. Moore*, 38 M.J. 490, 492 (C.M.A. 1994); *United States v. Gill*, 40 M.J. 835 (A.F.C.M.R. 1994); *United States v. Meakin*, No. ACM 38968, 2017 CCA LEXIS 476 (A.F. Ct. Crim. App. 14 Jul. 2017) (unpub. op.), *aff'd*, 78 M.J. 396 (C.A.A.F. 2019); *United States v. Lambert*, No. ACM 38291, 2014 CCA LEXIS 101 (A.F. Ct. Crim. App. 24 Feb. 2014) (unpub. op.); *United States v. Garrigan*, No. ACM 37920, 2013 CCA LEXIS 118 (A.F. Ct. Crim. App. 15 Feb. 2013) (per curiam) (unpub. op.).

the First Amendment, regardless of the military or civilian status of the 'speaker.'" *Id.* (citing *United States v. Williams*, 553 U.S. 285, 288 (2008); *United States v. Wilcox*, 66 M.J. 442, 447 (C.A.A.F. 2008)).

In *Lawrence v. Texas*, 539 U.S. 558 (2003), the United States Supreme Court described "a fundamental liberty interest to form intimate, meaningful, and personal bonds that manifest themselves through sexual conduct," that is protected by the Due Process Clause of the Fourteenth Amendment. *Meakin*, 78 M.J. at 403 (citing *Lawrence*, 539 U.S. at 567). The Fifth Amendment[7] Due Process Clause provides equivalent protections in the military justice system. *See id.* at 401 n.4. However, the CAAF has "reject[ed] [the] argument that distributing or transmitting obscenity that encourages, describes, and revels in the sexual exploitation of children over the internet falls within the fundamental liberty interest recognized in *Lawrence*." *Id.* at 403.

## B. Analysis

Appellant personally asserts the military judge erred by denying the defense motion to dismiss because sexting, "even about activity that would be illegal if actually acted upon," is conduct within a constitutionally protected liberty interest as defined by the Supreme Court in *Lawrence*. Appellant contends that two consenting adults—which was what he perceived his relationship with "J" to be—are "absolutely permitted to engage in private, sexually explicit communications." He cites Dr. MD's testimony regarding the prevalence of sexting and her description of it as sexual behavior that builds intimacy between the participants. Appellant characterizes the "act of sending private sexual desires" as a "personal intimac[y]" comparable to constitutionally protected activities involving family, marriage, motherhood, procreating, and child rearing. Appellant faults the military judge for relying on two unpublished decisions wherein this court upheld convictions for communicating indecent language, noting that both cases involved guilty pleas and were thus subject to a different standard of review and featured relatively little development of the underlying facts. *United States v. Lambert*, No. ACM 38291, 2014 CCA LEXIS 101 (A.F. Ct. Crim. App. 24 Feb. 2014) (unpub. op.); *United States v. Garrigan*, No. ACM 37920, 2013 CCA LEXIS 118 (A.F. Ct. Crim. App. 15 Feb. 2013) (per curiam) (unpub. op.).

Even more damaging to Appellant's position than these unpublished opinions is the CAAF's rejection of a similar argument in *Meakin*, 78 M.J. at 403. In *Meakin*, the appellant—an officer—used a pseudonym to "engage[ ] in a series of online conversations where he described in lurid detail the abuse, molestation, and rape of children with individuals through email, chat rooms, and

---

[7] U.S. CONST. amend. V.

instant messaging." *Id.* at 398. The appellant was convicted of numerous specifications of conduct unbecoming an officer in violation of Article 133, UCMJ, 10 U.S.C. § 933. *Id.* One of the appellant's arguments on appeal at the CAAF was that his convictions were legally insufficient because his private communications were protected by the fundamental liberty interest the Supreme Court identified in *Lawrence*. *Id.* at 402–03 (citations omitted). However, the CAAF firmly rejected this attempt "to place distributing or transmitting obscenity to individuals whose true names [the appellant] did not even know and whom he had not met, on par with the liberty interest and fundamental right to form intimate, meaningful, and personal bonds that manifest themselves through sexual conduct described in *Lawrence*," noting that "*Lawrence* did not purport to include any and all behavior touching on sex within its purview . . . ." *Id.* at 403 (citation omitted).

Appellant seeks to distinguish *Meakin* on the basis that it involved convictions for conduct unbecoming an officer in violation of Article 133, UCMJ, rather than communicating indecent language in violation of Article 134, UCMJ. Appellant cites extensively from the CAAF's opinion, which describes the historical tradition of holding officers "to a higher standard of behavior." *Id.* at 404 (citing *Parker v. Levy*, 417 U.S. 733, 743–45 (1974); William Winthrop, Military Law and Precedents 711 (2d ed., Government Printing Office 1920) (1895)). We are not persuaded. The portion of the opinion in *Meakin* that Appellant cites does not address the constitutional liberty interest from *Lawrence* at issue in the instant case, but an alternative defense argument—that even if the communications in *Meakin* were not *constitutionally* protected, the convictions were nonetheless legally insufficient because the charged communications were unconnected to the military mission. *Id.* at 403–05. The significance of the CAAF's opinion in *Meakin* is plain: communicating indecent language that "encourages, describes, and revels in the sexual exploitation of children" falls outside the liberty interest the Supreme Court recognized in *Lawrence*, even if the receiver is believed to be a willing adult recipient of the communication. *Id.* at 403.

We recognize that an "as applied" constitutional challenge to a statute is a fact-specific inquiry, and that the indecency of a communication depends on the context in which it was made. *See Ali*, 71 M.J. at 265 (citations omitted); *Green*, 68 M.J. at 270 (citation omitted). However, we conclude that the circumstances of Appellant's conviction involve no constitutional infirmity with respect to either due process or protected speech. The fact that Appellant's communications were made in light of the prospect of actually meeting "J" and her children, in order to observe and engage in actual acts of child sexual abuse, makes them no less indecent or obscene. Similarly, the fact that "J," far from being an intimate partner of Appellant, was someone he had never met,

and knew only through responding to an advertisement for child sexual abuse, does not strengthen Appellant's position.

We conclude the military judge did not abuse his discretion by denying the defense motion to dismiss.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court